Elhadi Benkirane
7506 Baerss Rd,
Riverside, California 92507
Telephone: (562) 391-1442
Benkirane.hadi@gmail.com
Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ELHADI BENKIRANE, | Case No. 2:25-cv-00314-DCN |
| *Plaintiff,* | **PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Magellan Healthcare Inc., David Welsh, David Tovar, and Does 1-10, | |
| *Defendants.* | Judge David C. Nye |

## I.  BACKGROUND

1. Plaintiff Elhadi Benkirane served as Executive Director of WHR IOP LLC ("WHR"), an intensive outpatient behavioral health provider located at 305 N. Lincoln Street, Post Falls, Idaho 83854. WHR provided behavioral health services, including intensive outpatient treatment, to Medicaid beneficiaries in North Idaho.

2. WHR's operations depended almost entirely on participation in the Idaho Integrated Behavioral Health Plan (IBHP). The Magellan contract provided the overwhelming majority of WHR's revenue. Plaintiff's livelihood as Executive Director depended directly on WHR's continued participation in the IBHP network.

3. In August 2024, WHR executed its initial contract with Magellan. Magellan lost the original signed contract and held WHR in uncertain contractual status for approximately eight months before forcing WHR to re-execute. Concurrently, Magellan systematically delayed payments to WHR without justification, leaving multiple months of completed services unpaid.

## II. MAGELLAN AS SOLE IBHP ADMINISTRATOR

4. Defendant Magellan Healthcare Inc. is the exclusive administrator of Idaho's Integrated Behavioral Health Plan, serving approximately 425,000 Medicaid beneficiaries statewide. Magellan operates as the sole statewide Medicaid behavioral health network under a contract with the Idaho Department of Health and Welfare (IDHW) valued at $1.216 billion.

5. As sole administrator, Magellan holds exclusive authority over credentialing, auditing, and terminating behavioral health providers. No provider may serve Medicaid behavioral health patients without Magellan's approval; termination operates as de facto exclusion from the Medicaid behavioral health market entirely.

6. Magellan itself has acknowledged that IDHW "partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan" (Exhibit M, p. 4). The IBHP Care Guidelines were reviewed and approved by IDHW. Magellan enforces state-created requirements through a joint framework with the State of Idaho.

## III. WELSH: IDHW TO MAGELLAN

7. Defendant David Welsh served as a senior IDHW official evaluating IBHP bids, giving Magellan's bid the second-highest score. Welsh then left IDHW and joined Magellan to administer the same contract. Amendment No. 1 designates Welsh as Magellan's sole Contractor Contact (Exhibit E, p. 1) and bears his digital signature, binding Magellan to the $1.216 billion contract (Exhibit E, p. 10).

8. Welsh evaluated IBHP bids at IDHW, left state employment, signed a contract on behalf of awardee Magellan (Exhibit E, pp. 1, 10), and subsequently exercised termination authority over network providers. State formally reviewed and approved Welsh as key personnel under Amendment No. 1, Section 4.4 (mandatory timelines, reporting, conflict-free service obligations: Sections 2.7, 2.27, 39.1). This trajectory supports the inference that Welsh's role extended beyond neutral administrative oversight.

## IV. TOVAR'S COMPETING CLINIC

9. Defendant David Tovar formerly served as IDHW Bureau Chief for IBHP Governance, a senior state position with direct oversight responsibility over the IBHP program. Tovar joined Magellan as Network Manager for the same IBHP program he had previously overseen at IDHW.

10. Idaho Secretary of State confirms that Tovar is listed as Manager of Treasure Valley Counseling and Wellness PLLC (Exhibit H), a directly competing behavioral health clinic established in July 2023. Tovar's public professional profile identifies him as Co-Owner of Treasure Valley Counseling and Wellness PLLC (Exhibit D). Lisa Marie Tovar, LCSW, is the owner of record (NPI 1649959495) (Exhibit W).

11. Tovar established a management role in the competing clinic during the same period he held enforcement authority over WHR at Magellan. Amendment No. 1, Section 2.14 mandates conflict-free service provision (Exhibit E); Tovar's simultaneous management of Treasure Valley Counseling and Wellness PLLC while exercising enforcement authority over WHR supports the plausibility that enforcement was influenced by personal competitive interest.

## V.  WHR GOOD STANDING: FEBRUARY 2025

12.  February 2025: WHR confirmed in "good standing" with Magellan (Exhibits S, T); active contract, active billing, no identified deficiencies. Transition from confirmed good standing to termination occurred within ninety days, coinciding precisely with Plaintiff's protected communication and intensified payment demands.

## VI. THE MARCH 27, 2025 PROTECTED COMMUNICATION

13. March 26, 2025: WHR sent Magellan a formal written demand for $146,831.02 in unpaid services (Exhibit U); billing company had ceased operations due to payment delays. March 27, 2025: Plaintiff, individually, sent a formal pre-litigation communication asserting constitutional rights, raising selective enforcement concerns, naming Welsh and Tovar, and asserting anticipated personal legal action (Exhibit N).

14. No prior audits or enforcement actions against WHR preceded the March 27, 2025, communication. March 27 communication is a protected petitioning activity under the First Amendment Petition Clause. BE&K Construction Co. v. NLRB, 536 U.S. 516, 524-25 (2002).

## VII. ENFORCEMENT TIMELINE

### A. May 1, 2025: Unannounced Audit

15. May 1, 2025: Magellan initiated an unannounced compliance audit without prior notice (Exhibit C); it violated the two-week advance notice requirement (Exhibit B, p. 56).

### B. May 6, 2025: Selective Enforcement Challenge and Non-Response

16. May 6, 2025: WHR staff raised a written selective enforcement challenge re Moonlight Mountain Counseling; Magellan never responded (Exhibit C). May 8, 2025: Nansel forwarded the chain to Tovar and Welsh; Defendants escalated enforcement.

### C. May 12, 2025: Second Audit with Three Days' Notice

17. May 12, 2025: Second compliance audit with only three days' advance notice; below two-week minimum (Exhibit B, p. 56).

### D. May 19, 2025: Deficiency Letter

18. May 19, 2025: Tovar signed a deficiency letter citing ten alleged deficiency categories (Exhibit G); signed while simultaneously managing competing clinic Treasure Valley Counseling and Wellness PLLC.

### E. May 22, 2025: Provider Advisory Committee Meeting

19. May 22, 2025: PAC minutes confirm Plaintiff marked absent while Tovar chaired; no prior notice of issue with PAC participation (Exhibit P).

**F.  May 27, 2025: Remediation Submission at 10:12 a.m. (Exhibit K)**

20. May 27, 2025, 10:12 a.m.: Plaintiff submitted full remediation of all ten deficiency categories, including five licensed staff, clinical supervision, 24-hour crisis protocols, and verified credentials (Exhibit K); simultaneously filed formal written appeal (Exhibit O). No submission was acknowledged before termination.

**G.  May 27, 2025: Same-Morning Termination (Exhibit J)**

21.  May 27, 2025: Welsh signed the termination letter addressed to "Elhadi Benkirane, OWNER," not WHR IOP LLC (Exhibit J). Termination issued the same morning full remediation was submitted; inconsistent with mandatory timelines under Amendment No. 1, Sections 2.7, 2.14, 2.27 (Exhibit E). The termination letter reserved "additional grounds" beyond the ten deficiency categories, suggesting pretext.

**H.  May 29, 2025: Audit Summary (Exhibit R)**

22. May 29, 2025: Magellan circulated an audit summary email listing site visit attendees and the scope of enforcement action (Exhibit R).

**I.  June 2, 2025: Tovar Files Competing Clinic's Annual Report**

23. June 2, 2025: Tovar filed an annual report for Treasure Valley Counseling and Wellness PLLC (competing clinic). June 6, 2025: Plaintiff removed from Provider Advisory Committee by name, without notice or stated contractual basis (Exhibit I); Tovar remained on PAC. Appeal filed May 27; removal ten days later is direct temporal evidence of retaliation prohibited by Handbook anti-retaliation provision (Exhibit B, p. 54).

**K.  July 7, 2025: Appeal Follow-Up with No Response (Exhibit Q)**

24. July 7, 2025: Written follow-up on appeal; reiterated selective enforcement concern re Moonlight Mountain; no substantive response (Exhibit Q).

**L.  August 25, 2025: Appeal Still Unresolved (Exhibit V)**

25. August 25, 2025: Follow-up requesting immediate appeal decision (Exhibit V); nearly three months post-termination with no substantive appeal response.

### VIII. TOVAR'S ADMISSION: COMMONPLACE PRACTICES

26. Tovar himself expressed surprise that WHR's cited practices were commonplace among other IBHP network providers (Exhibit C); other providers at greater volume continued operating without audits, deficiency letters, or termination for the same practices.

27. Moonlight Mountain Counseling: same IBHP contract, same IOP/PHP services, same Medicaid population, same North Idaho region as WHR; received no unannounced audits, no deficiency letters, no termination, and no network removal.

### IX. CREDENTIALING RECORDS CONTRADICT STATED BASIS

28. Magellan's own credentialing system reflected credentialed providers actively associated with WHR at termination: Ari S. Labowitz (MA), Aneel Ahmed Ursani (MD), Nina Kellie Abul Hus (MD), and Samantha Arnold (MSW) (Exhibit F). These records directly contradict the stated termination basis of staffing deficiencies and support the inference of pretext.

### X.  FIVE MANDATORY CONDITIONS BYPASSED

29. Five mandatory conditions precedent to provider termination under IBHP Provider Handbook Supplement, Section 4 (Exhibit B), using mandatory "will," "must," and "shall" language (pp. 51, 54); all five bypassed:

(a)  Advance Notice for Site Visits (Exhibit B, p. 56): Both May 1 and May 12 audits were conducted without the required two-week advance written notice.

(b) Ninety-Day Corrective Action Monitoring Period (Exhibit B, p. 58): Deficiency letter issued May 19; termination followed within eight days, no ninety-day monitoring period provided.

(c) Sequential Pre-Termination Notice Protocol (Exhibit B, p. 62): No collaborative remediation process conducted before May 27 termination.

(d) Thirty-Day Substantive Appeal Response by Independent Staff (Exhibit B, p. 54): Appeal submitted May 27, 2025; no substantive response within thirty, sixty, or ninety days.

(e) Provider Complaint Resolution Within 30 Business Days (Exhibit B, pp. 51-52): Formal complaint submitted March 27, 2025; never acknowledged, investigated, or resolved.

## XI. ILLUSORY APPEAL STRUCTURE

30. Termination letter directed Plaintiff's appeal exclusively to Welsh, the same individual who signed the termination (Exhibit J). Mathews v. Eldridge, 424 U.S. 319, 335 (1976) requires a neutral decision-maker; routing the appeal to Welsh eliminated independent review and rendered the appeal constitutionally illusory.

31. As of August 25, 2025, nearly three months post-termination, no substantive appeal decision has been issued; Welsh's dual role as terminator and sole appeal reviewer supports the inference of a predetermined outcome.

## XII. FALSE STATEMENTS TO PATIENTS

32. After May 27, 2025, termination, Magellan staff told WHR patients WHR had "voluntarily terminated" participation in the IBHP network (Exhibit J contradicts this; Exhibit J is Magellan-initiated termination). False statements damaged Plaintiff's personal and professional reputation and directed WHR patients toward other providers, including Tovar's competing clinic's region.

## XIII. FINANCIAL CONTEXT

33. March 26, 2025: WHR sent Magellan a written demand for $146,831.02 in unpaid services (Exhibit U), following a period of systematic payment delays. First compliance audit commenced immediately after intensified payment demands, providing an independent retaliatory motive in addition to Plaintiff's March 27 protected communication.

34. Magellan's loss of the original signed contract, forced re-execution, and payment delays destabilized WHR operations in the months preceding the enforcement cascade.

## XIV. PERSONAL INJURIES

35. September 1, 2025: WHR terminated Plaintiff's employment as Executive Director, expressly attributing that decision to the loss of the Magellan contract (Exhibit J). Plaintiff suffered personal economic damages exceeding $500,000: lost salary, lost equity value in WHR, and diminished future earning capacity.

36. Plaintiff removed from PAC by name June 6, 2025, without notice or contractual basis (Exhibit I), constituting independent personal injury held in individual capacity. Magellan's false "voluntary termination" statements to patients damaged Plaintiff's personal and professional reputation. Sixty-one days elapsed between March 27 protected communication and May 27 termination; no prior compliance issues, audits, or enforcement actions preceded the March 27 communication.

Respectfully submitted,

DATED: May 16, 2026

/s/ Elhadi Benkirane

Elhadi Benkirane
7506 Baerss Rd,
Riverside, California 92507
Telephone: (562) 391-1442
Benkirane.hadi@gmail.com
Plaintiff, Pro Se