Elhadi Benkirane
7506 Baerss Rd,
Riverside, California 92507
Telephone: (562) 391-1442
Benkirane.hadi@gmail.com
Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ELHADI BENKIRANE,<br><br>                    *Plaintiff*,<br><br>v.<br><br>MAGELLAN HEALTHCARE, INC.<br>DAVID WELSH; DAVID TOVAR; and<br>DOES  1 through 10,<br><br>                    *Defendants.* | Case No. 2:25-cv-00314-DCN<br><br>**PLAINTIFF'S EXHIBIT LIST IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Plaintiff Elhadi Benkirane hereby submits the following Exhibit List in support of Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint. All exhibits are described below.

**Exhibit A:** Magellan Healthcare Care Guidelines for the Idaho Behavioral Health Plan (IBHP). Page 51 establishes the formal provider complaint system. Page 54 prohibits punitive action against any provider who requests or supports an appeal. Cited alongside Exhibit B, pp. 51, 54, as the primary contractual source of the protection of anti-retaliation at issue.

- **Exhibit B:** IBHP Provider Handbook Supplement (Magellan Healthcare, Inc., effective Apr. 1, 2026), the governing provider handbook for the IBHP network, cited for: (a) Complaint and Grievance Process establishing formal complaint system and anti-retaliation protection for providers who appeal (pp. 51, 54); (b) Site Visits section requiring two weeks' advance written notice for any routine site visit (p. 56); (c) Treatment Record Review section defining the corrective action monitoring period as "spanning 90 days for routine action plan monitoring and collaborative dialogue" (p. 58); (d) Inquiry and Review Process mandating a sequential pre-termination notice protocol before any change in network participation status (p. 62); (e) Appeal independence requirement prohibiting appeal decisions by staff involved in the prior review or decision (p. 54); (f) IDHW operational control provisions stating Magellan must "act as directed by IDHW," that its Quality Improvement Program is "reviewed and approved by IDHW," and that enforcement investigations proceed under "IDHW-approved policies and procedures" (pp. 45-46); (g) monthly provider complaint reporting obligation to IDHW (p. 52); and (h) IBHP Introduction stating "The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan" (p. 4).

- **Exhibit C:** May 6, 2025 email exchange between Magellan and WHR staff: (a) Tovar's characterization of the May 1, 2025 site visit as "informal visits by nature" that "allow our team to understand the full continuum of care offered by our providers"; (b) WHR staff member Marley's response stating the visit had "turned into what feels like an extensive audit"; and (c) Marley's written selective enforcement challenge, asking whether similar compliance procedures had been initiated against Moonlight Mountain locations; Magellan never answered this inquiry.

- **Exhibit D:** David Tovar's public professional profile identifies him as Co-Owner of Treasure Valley Counseling and Wellness PLLC, a behavioral health clinic established in July 2023 that directly competes with WHR for the same Medicaid patient population in the same North Idaho service area. Establishes Tovar's personal financial stake in WHR's elimination from the IBHP network.

- **Exhibit E:** IBHP Contract Amendment No. 1 (State of Idaho / Magellan Healthcare, Inc., dated Feb. 14, 2024), the operative $1.216 billion state contract, cited for: (a) designation of David Welsh as Magellan's sole Contractor Contact with the State (p. 1); (b) Welsh's digital signature binding Magellan to the contract (p. 10); (c) Section 4.4 requiring Magellan to notify IDHW within two business days of any key-personnel change and provide resumes, confirming state approval of Welsh and Tovar; (d) mandatory deliberate decision-making timelines for medical necessity reviews (Sections 2.7, 2.27); (e) continuity of care, intensive care coordination, and crisis system management obligations (Sections 2.1, 2.14, 2.15); and (f) conflict-free service obligations (Section 39.1).

- **Exhibit F:** Magellan's internal credentialing system records, at the time of termination, the credentialed providers currently associated with WHR, including Ari S. Labowitz (MA), Aneel Ahmed Ursani (MD), Nina Kellie Abul Hus (MD), and Samantha Arnold (MSW). These records directly contradict the stated basis for termination for alleged staffing and credentialing deficiencies.

- **Exhibit G:** May 19, 2025, deficiency letter from David Tovar to WHR, identifying ten deficiency categories that Tovar asserted WHR had failed to satisfy, and establishing the formal basis on which Magellan subsequently issued the termination letter. Signed by Tovar while he held a management role in a directly competing behavioral health clinic.

- **Exhibit H:** Idaho Secretary of State records confirming David Tovar is listed as Manager of Treasure Valley Counseling and Wellness PLLC, established in July 2023. This behavioral health clinic directly competes with WHR for the same Medicaid patient population. Corroborates Exhibit D as to Tovar's management role in a competing clinic while simultaneously conducting compliance audits against WHR and signing the deficiency letter.

- **Exhibit I:** June 6, 2025, email from Tovar's assistant Amy Topp to Plaintiff titled "Canceled: Idaho Provider Advisory Committee (PAC 3) Meeting," with David Tovar copied, effectuating Plaintiff's removal by name from the PAC without prior notice, without stated reason, and without any contractual basis tied to WHR's network status. Tovar, who managed a directly competing behavioral health clinic, remained on the PAC.

- **Exhibit J:** May 27, 2025, termination letter signed by David Welsh and addressed personally to "Elhadi Benkirane, OWNER", not to WHR IOP LLC as a corporate entity, demonstrating

Defendants' recognition of Plaintiff's individual role and personal stake in the provider relationship. The letter reserved "the right to assert additional grounds for termination at any time," suggesting the stated deficiency rationale was pretextual. The appeal was directed exclusively to Welsh, the same individual who signed the termination letter.

- **Exhibit K:** May 27, 2025, remediation submission by Plaintiff: comprehensive written remediation of all ten identified deficiency categories, submitted to Magellan at 10:12 a.m. on the same morning the termination letter was issued. Includes documentation of new clinical staff hired, supervision protocols implemented, PHP/IOP programming separation, 24-hour crisis service protocols, in-person therapy conversion, and updated care coordination and discharge planning. Directly contradicts the stated basis for termination.

- **Exhibit L:** May 2025 email communications from Plaintiff to Magellan providing staff credentials, updated provider rosters, and compliance documentation throughout the remediation period, demonstrating ongoing, good-faith engagement with Magellan's requirements in the weeks leading up to termination.

- **Exhibit M:** IBHP Provider Handbook Supplement, page 4 of the original document (submitted as a standalone exhibit for the state-actor admission), containing the statement: "The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan (IBHP) to administer and also transform the state's behavioral health system of care." This is Magellan's own written admission of its role as state-delegated administrator, submitted independently to isolate this single critical passage for the Court's reference.

- **Exhibit N:** March 27, 2025, pre-litigation communication from Plaintiff Elhadi Benkirane to Defendants David Welsh and David Tovar in their individual capacities, asserting anticipated personal litigation against each of them individually and raising concerns regarding selective enforcement of compliance standards against WHR. Constitutes the protected petition activity at the core of Plaintiff's First Amendment retaliation claim.

- Exhibit O: May 27, 2025, formal appeal letter submitted by Plaintiff to Magellan at 10:12 a.m., submitted simultaneously with the remediation submission, invoking WHR's right to appeal under the IBHP Handbook and requesting substantive review of the deficiency findings (APPEAL LETTER.pdf / Magellan.pdf). Magellan issued no response for nearly three months.

- **Exhibit P:** Official PAC meeting minutes from May 22, 2025, confirming that Plaintiff received no prior notice of any issue with his PAC participation and was simply marked absent in the minutes while Tovar chaired the meeting. Establishes that Plaintiff's removal on June 6 was abrupt, unannounced, and unrelated to any prior procedural deficiency.

- **Exhibit Q:** July 7, 2025, email from Plaintiff's staff to Magellan requesting an update on the pending appeal and reiterating the selective enforcement concern, noting that Moonlight Mountain and other similarly situated providers had not been subjected to comparable enforcement action (REQUEST FOR UPDATE.pdf). Magellan did not respond.

- **Exhibit R**: May 29, 2025, audit summary email from Magellan (AUDIT.pdf), sent two days after the termination letter, listing the site-visit attendees by name and summarizing the details of the enforcement action taken against WHR, including the specific audit findings that formed the stated basis for the deficiency letter and termination. Establishes who participated in the enforcement action and the scope of the audit.

- **Exhibit S:** February 21, 2025, network-status email from Magellan to WHR confirming WHR was in good standing in the IBHP network, with an active contract and billing status, and no compliance issues or enforcement actions (emailmag.pdf). Establishes WHR's pre-enforcement status and the absence of any compliance concern before Plaintiff's March 27, 2025, protected communication.

- **Exhibit T**: February 2025 contracting/TIN/ASAM email chain between Magellan and WHR confirming WHR's network provider agreement was fully executed and active, with billing credentials in place and no outstanding compliance issues (EM22.pdf). Corroborates Exhibit S as to WHR's good standing immediately before the protected activity.

- **Exhibit U**: March 26, 2025 demand letter from WHR to Magellan for an outstanding balance of $146,831.02 (not including authorized detox and RTC days), together with Plaintiff's April 6, 2025 urgent email to Magellan documenting Magellan's systematic payment delays and claims denials: the network provider agreement was signed January 3, 2025, yet WHR's claims were still being denied as out-of-network; WHR's billing company had quit due to non-payment; and multiple months of completed services remained unpaid. The first compliance audit commenced immediately after WHR intensified its payment demands, providing an independent basis for a retaliatory motive.

5

- **Exhibit V:** August 25, 2025, follow-up email from Plaintiff to Magellan requesting an immediate decision on the pending appeal, noting that the ongoing delay was causing significant harm, including vulnerable patients unable to access services, over five qualified staff displaced, and operations continuing to deteriorate. Confirms that as of August 25, 2025, nearly three months after termination, Magellan had issued no decision on the appeal.

- **Exhibit W:** National Provider Identifier (NPI) public registry records confirm Lisa Marie Tovar, LCSW, as the registered owner of Treasure Valley Counseling and Wellness PLLC (NPI 1649959495), the clinic in which David Tovar holds a management role. Corroborates Exhibits D and H as to the existence and identity of the competing clinic.

- **Exhibit X:** Idaho Department of Health and Welfare bid evaluation records showing that David Welsh, while still employed as a senior official at IDHW, evaluated competing bids for the IBHP contract and gave Magellan's bid the second-highest score. Welsh subsequently left IDHW and assumed the role of Magellan's sole Contractor Contact with the State, personally executing the $1.216 billion IBHP contract.

Total Exhibits: 24 (A through X). All exhibits are submitted with Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint and are described in this Exhibit List, filed separately.

Respectfully submitted,

Dated: May 16, 2026

_____

Elhadi Benkirane

7506 Baerss Rd,

Riverside, California 92507

Telephone: (562) 391-1442

Benkirane.hadi@gmail.com

Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

               *Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

               *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT A

**Magellan Healthcare Care Guidelines for the Idaho Behavioral Health Plan (IBHP). Page 51 establishes the formal provider complaint system. Page 54 prohibits punitive action against any provider who requests or supports an appeal. Cited alongside Exhibit B, pp. 51, 54, as the primary contractual source of the protection of anti-retaliation at issue.**

SECTION 4: THE QUALITY PARTNERSHIP

# Complaint and Grievance Process

### Our Philosophy

To achieve a high level of member satisfaction and care, Magellan believes in providing a mechanism for providers and external agencies to express complaints related to care, service, confidentiality, policy, procedure, payment, or any other communication or action by Magellan. External agencies and/or providers can also file grievances about a network provider.

### Our Policy

Magellan maintains a provider complaint system for providers to dispute Magellan's policies, procedures, or any aspect of Magellan's administrative functions. Magellan defines a provider complaint as any verbal or written expression originating from a provider and delivered to any employee of Magellan that voices dissatisfaction with a policy, procedure, payment, or any other communication or action by Magellan. Please note that we process member grievances and appeals filed by providers on behalf of a member using our *member* grievance and appeals policies (in the member handbook, accessed at MagellanofIdaho.com).

### What You Need to Do

To submit a complaint, call 1-855-202-0983 (TTY/TDD: 711) 8 a.m. to 6 p.m. Mountain time, fax us at 1-888-656-9795, or email us at IDAC@MagellanHealth.com. You also may submit complaints in writing to: Magellan Healthcare, Inc., Attn: Idaho Quality Department, P.O. Box 2188, Maryland Heights, MO 63043.

If the complaint is about the Youth Empowerment Services (YES) system of care and you wish to file anonymously, you may file a complaint with the Idaho Department of Health and Welfare (IDHW) via the contact information posted at yes.idaho.gov/youth-empowerment-services/about-yes/contact-us/?target=4. Complaints about YES that do not need to be made anonymously can be filed with Magellan.

### What Magellan Will Do

Magellan's responsibility to you is to:
- Operate a toll-free telephone line to respond to provider questions, comments, and inquiries. That number is 1-855-202-0983 (TTY 711) and is available 8 a.m. to 6 p.m. mountain time. Magellan will respond to voice messages left by providers on this line within two business days.
- Have a designated Magellan staff person administer and oversee the provider complaint system.
- Allow providers to file a written complaint and provide a description of how providers can file complaints with Magellan and the resolution timeframe.
- Thoroughly investigate each complaint using applicable statutory, regulatory, and contractual provisions, collecting all pertinent facts from all parties, and applying Magellan's written policies and procedures.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

    *Plaintiff*,

                   Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES 1 through 10,

    *Defendants.*

# EXHIBIT B

IBHP Provider Handbook Supplement (Magellan Healthcare, Inc., effective Apr. 1, 2026), the governing provider handbook for the IBHP network, cited for: (a) Complaint and Grievance Process establishing formal complaint system and anti-retaliation protection for providers who appeal (pp. 51, 54); (b) Site Visits section requiring two weeks' advance written notice for any routine site visit (p. 56); (c) Treatment Record Review section defining the corrective action monitoring period as "spanning 90 days for routine action plan monitoring and collaborative dialogue" (p. 58); (d) Inquiry and Review Process mandating a sequential pre-termination notice protocol before any change in network participation status (p. 62); (e) Appeal independence requirement prohibiting appeal decisions by staff involved in the prior review or decision (p. 54); (f) IDHW operational control provisions stating Magellan must "act as directed by IDHW," that its Quality Improvement Program is "reviewed and approved by IDHW," and that enforcement investigations proceed under "IDHW-approved policies and procedures" (pp. 45-46); (g) monthly provider complaint reporting obligation to IDHW (p. 52); and (h) IBHP Introduction stating "The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan" (p. 4).

SECTION 1: INTRODUCTION

# Welcome

Welcome to the Idaho Behavioral Health Plan (IBHP) Provider Handbook Supplement, which addresses policies and procedures specific for the IBHP. This provider handbook supplement is to be used in conjunction with the Magellan National Provider Handbook (and Magellan organizational provider supplement, as applicable). When information in this supplement conflicts with the national handbook, or when specific information does not appear in the national handbook, the policies and procedures in the IBHP supplement prevail. Additionally, Magellan requires all providers to adhere to the standards outlined in the Idaho Medicaid Provider Handbook.

## Contact Information

If you have questions, Magellan is eager to assist you. We encourage you to visit our IBHP dedicated website at www.MagellanofIdaho.com. We have designed www.MagellanofIdaho.com for you to have quick and easy access to information and answers to questions you may have about working with Magellan.

- Through the Availity Essentials portal, accessed at www.Availity.com, you can look up authorizations and verify the status of a claim online, in addition to completing other key provider transactions.
- For authorizations, claims status inquiries and complaints and grievances, contact Magellan Healthcare of Idaho at 1-855-202-0983.
- For general inquiries, contact Magellan's national Provider Services Line at 1-800-788-4005.
- For Idaho network-specific inquiries, email us at IdahoProvider@MagellanHealth.com or call the provider line at 1-855-202-0983.

## Idaho Behavioral Health Plan (IBHP) Introduction

The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan (IBHP) to administer and also transform the state's behavioral health system of care. The IBHP is the framework for how behavioral health and substance use disorders are administered in Idaho. Magellan manages behavioral health services for the Divisions of Behavioral Health and Medicaid. Magellan also manages the provider network for the Department of Juvenile Corrections. We oversee behavioral health services for Idahoans who don't have health insurance as well as those who have Medicaid or other types of insurance. IBHP serves approximately 425,000 children and adults with complex behavioral health needs.

## Covered Services

Refer to Appendix C IBHP Program Services.

SECTION 4: THE QUALITY PARTNERSHIP

# A Commitment to Quality

### Our Philosophy
Magellan is committed to continuous quality improvement and outcomes management through its Quality Improvement Program that includes assessment, planning, measurement, and re-assessment of key aspects of care and service.

### Our Policy
Magellan maintains an internal Quality Assurance Process Improvement (QAPI) program that complies with state and federal standards specified in 42 CFR §438.200, the Idaho Medicaid State Plan, and any other requirements as issued by IDHW. In support of our Idaho Quality Improvement Program, our providers are required to be familiar with Medicaid and Magellan guidelines and standards and apply them in their work with members.

### What You Need to Do
Your responsibility is to:
- Understand federal, tribal, and Idaho state standards applicable to providers.
- Comply with federal, tribal, and Idaho state laws, the provider agreement, and all other quality management requirements.
- Adhere to clinical practice guidelines, as appropriate.
- Provide feedback and recommendations to improve Magellan's performance.
- Support members and their families/caregivers to submit complaints, appeals, feedback, and recommendations to improve Magellan's performance.
- Participate and cooperate fully in any monitoring and site reviews conducted by Magellan.
- Participate in quality reviews and/or quality improvement activities as requested by Magellan and IDHW.

### What Magellan Will Do
Magellan's responsibility to you is to:
- Operate a toll-free telephone line to respond to provider questions, comments, complaints, and inquiries. The provider line number is 1-855-202-0983 (TTY 711) and is available 8 a.m. to 6 p.m. Mountain time. Magellan will respond to voice messages left by providers on this line within two business days.
- Establish an Idaho Quality Improvement Program based on a model of continuous quality improvement using clinically sound, nationally developed and accepted criteria.
- Form an Idaho Quality Improvement Committee (QIC) that meets the following requirements:
    - Be co-chaired by Magellan Healthcare of Idaho's medical director.
    - Include the appropriate Magellan staff representing the various departments of Magellan, IDHW staff, and IDHW-identified external stakeholders.

- Implement an annual written Quality Improvement Program description and work plan, which includes complaints, grievances and critical incidents, and complies with IDHW requirements as specified in our contract and reviewed and approved by IDHW.
- Submit an annual Quality Improvement Program evaluation to IDHW that includes, but is not limited to, results of quality activities and findings that incorporate prior year information and contain an analysis of any demonstrable improvements in the quality of care.
- Ensure that quality improvement processes are data-driven, including the continual measurement of clinical and non-clinical processes. These are driven by the measurement and the re-measurement of effectiveness and continuous development and implementation of improvements as appropriate.
- Take appropriate action to address service delivery, provider, or other quality issues as they are identified.
- Have sufficient mechanisms in place to solicit feedback and recommendations from key stakeholders, youth and their families/caregivers, and providers, and use the feedback and recommendations to improve performance.
- Participate in the review of quality findings and act as directed by IDHW.
- Ensure that an appropriate corrective action is taken when a provider or provider's staff furnishes inappropriate or substandard services, does not furnish a service that should have been furnished, or is out of compliance with federal, tribal, and state regulations.
- Monitor and evaluate corrective actions taken to ensure that appropriate changes have been made in a timely manner.
- Survey members on an annual basis to assess member satisfaction with quality, availability, and accessibility of care and experience with their providers and Magellan. The Quality team will share results with Magellan's Provider Advisory Councils and in existing network communications.
- Cooperate fully in quality reviews conducted by IDHW and ensure full cooperation of our network providers.
- Use quality review findings to enhance the Quality Improvement Program and take action to address identified issues in a timely manner, as directed by IDHW.

### Quality of Care

A key function of the quality department is investigating Quality of Care Concerns (QoCC's). The quality team utilizes IDHW-approved policies and procedures to guide these investigations.

QoCC's are received through:
- Complaint processes
- Critical incident reporting
- Medical director treatment record reviews
- Care coordination
- Utilization management
- Fraud, waste, abuse investigations
- Provider or member concern escalation

QoCC's are conducted by licensed professionals with medical director oversight.

- Resolve and provide written notification of complaint resolution within 30 business days of receipt.
- Ensure a Magellan executive with the authority to require corrective action is involved in the provider complaint escalation process, as necessary.
- Operate a system to capture, track, and report the status and resolution of all provider complaints, which includes all associated documentation, whether the complaint is received by telephone, in person, or in writing.
- Submit a monthly report of all complaints to IDHW including the nature of the complaint, resolutions, and timeframes.
- Address any irregular trends, identified either internally or by IDHW, which require corrective action by Magellan.

- Allowing the member, a representative acting on the member's behalf, or network provider, with the member's written consent, to request a standard or expedited appeal either orally or in writing.
- Maintaining a website (Magellan Healthcare Payer Space in Availity Essentials) through which an appeal can be initiated via an electronic appeal form.
- Assisting members in completing forms and taking other procedural steps. This includes, but is not limited to, providing interpreter services and toll-free numbers that have adequate TTY/TDD and interpreter capability.
- Sending a written acknowledgement of the appeal request within five business days of receipt.
- Providing the member an opportunity to examine their case file, including treatment records, other documents and records considered during the appeals process, and any new or additional evidence considered, relied upon, or generated by Magellan in connection with the appeal. This information must be provided free of charge and well in advance of the date by which Magellan must resolve the appeal.
- Ensure that Magellan staff who are involved in the appeal decisions:
    - Were not involved in any previous level of review or decision-making, nor a subordinate of any such individual.
    - Have the appropriate clinical expertise in treating the member's condition or disease.
    - Consider all comments, documents, records, and other information submitted by the member or member's representative without regard to whether such information was submitted or considered in the initial adverse benefit determination.
- Not take any punitive action against any member, member's authorized representative, or provider who requests or supports an appeal.
- Resolve an appeal and provide written notice, as expeditiously as the member's health condition requires, but no later than the timeframes established below:
    - For standard resolution of an appeal and notice to the member or member's authorized representative, the timeframe is 30 calendar days from the day the appeal is received.
    - For expedited resolution of an appeal and notice to affected parties, the timeframe is 72 hours after receipt of the appeal.
- At the request of the member, or if Magellan believes that there is need for additional information and the delay is in the member's interest, Magellan will extend the timeframe for completing appeals by up to 14 additional calendar days.
- Provide written notice to the member, member's authorized representative, or network provider with member's written consent to appeal, of the resolution of the appeal, which complies with all state, tribal, and federal regulations and IDHW requirements and includes the results of the resolution process and the date it was completed. When the appeal is not resolved wholly in favor of the member or timely within the timeframes described above, the written notice will also include:
    - The right to request a State Fair Hearing, and how to do so.
    - The right to request to receive benefits while the hearing is pending, and how to do so.
    - Notice that the member may be held liable for the cost of those benefits if the hearing decision upholds Magellan's action.

SECTION 4: THE QUALITY PARTNERSHIP

# Site Visits

### Our Philosophy
Site reviews are a joint responsibility of Magellan Network Management and Magellan Quality Improvement staff, depending on the purpose of the site visit. Administrative reviews may be conducted by non-clinicians, while treatment record reviews evaluating the clinical care and services provided are performed by licensed clinicians. Magellan's approach is to collaboratively partner with a provider on any quality treatment record review, as this has the benefit of improving network performance and service delivery. We provide results of a quality treatment record review conducted on site or electronically to the provider in a timely manner.

### Our Policy
Site visits may be conducted at minimum:
- During initial credentialing for participation in the network.
- On other occasions when Magellan determines it is necessary, including, but not limited to, for quality reasons.

Magellan evaluates site visit findings and sends a written report to the provider within 30 calendar days. The report includes the following information:
- The findings from the site visit.
- Recommendations for improvement, if needed.
- A request for a corrective action plan to improve care or services, if indicated.

### What You Need to Do
To comply with this policy your responsibility is to:
- Comply with requests for site visits within five business days.
- Provide information in a timely manner, including files as requested by the site visit reviewer. This is also within five business days.
- Be available to answer questions from the reviewer at the time of review or follow up.
- Participate in developing and implementing a corrective action plan if required.

### What Magellan Will Do
Magellan's responsibility to you is to:
- Notify you in writing if a site visit is required. Magellan quality will provide two weeks' advance notice for any routine visit.
- Advise you of what you need to do to prepare for the site visit.
- Notify you of the results of the site visit in a timely manner. This is within 30 calendar days.
- Work with you to develop a corrective action plan, if required.

- - The functional title, applicable educational degree and/or professional license of the person making the entry.
  - The full date of documentation.
  - Reviewed by the supervisor, if required.
- Follow industry-standard CMS and state recordkeeping and retention guidelines for electronic signatures.
  - CMS medical review guidelines for using electronic signatures require that systems and software products include protections against modification and providers should apply administrative safeguards that meet all standards and laws. The individual's name on the alternate signature method and the provider accept responsibility for the authenticity of attested information.
- Ensure service/progress notes document the service/progress billed. Service/progress notes must reflect the service delivered and are the "paper trail" for services delivered.
- Provider's treatment record documentation must match all submitted claims and align with the service(s) billed on the claim (e.g., diagnosis, DOB, procedure code).
- If a member misses an appointment, there is documentation indicating why the appointment was missed (if this is known) and what efforts were made to re-engage the member in treatment and follow up with the member.

### What Magellan Will Do

Magellan's responsibility to you is to:

- Conduct reviews of member medical and treatment records by a licensed mental health professional.
- Communicate with providers at the time of request that treatment records are to be made available for review within five business days.
- Use the Treatment Record Review Tool.
- Ensure that appropriate corrective action is taken when a provider or provider's staff furnishes inappropriate or substandard services, does not furnish a service that should have been furnished, or is out of compliance with federal, tribal, and state regulations. Substandard services are those that have or have the potential for a negative (adverse) impact on the member or services received.
- Monitor and evaluate corrective actions taken to ensure that appropriate changes are made in a timely manner. Magellan defines timely as within five business days for provider response to a specific action plan question and spanning 90 days for routine action plan monitoring and collaborative dialogue.
- Submit quarterly reports to the IDHW that summarize results of treatment record reviews and corrective actions taken for specialized behavioral health services.

SECTION 4: THE QUALITY PARTNERSHIP

# Inquiry and Review Process

**Our Philosophy**

Magellan is committed to developing and maintaining a high-quality IBHP provider network.

**Our Policy**

Magellan maintains a process for inquiry, review, and action when concerns regarding provider performance are identified.

**What You Need to Do**

Your responsibility is to:

- Actively participate and cooperate with the investigation and resolution of any identified concerns as a condition of continued participation in the Magellan provider network.

**What Magellan Will Do**

Magellan's responsibility to providers is to:

- Contact you by phone or in writing to inquire about the nature of the concern and request additional information if a concern regarding quality of care or service is raised.
- Advise you if any type of review is required.
- Review all inquiries for adequate resolution of any performance concerns.
- Advise you when a corrective action plan and follow-up are required.
- Advise you of a change in the conditions of your network participation, if required.
- Advise you, in writing, if any action is taken because of the inquiry and review process.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

　　　　　　　　*Plaintiff*,

Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.

DAVID WELSH; DAVID TOVAR; and

DOES 1 through 10,

　　　　　　　　*Defendants.*

# EXHIBIT C

May 6, 2025 email exchange between Magellan and WHR staff: (a) Tovar's characterization of the May 1, 2025 site visit as "informal visits by nature" that "allow our team to understand the full continuum of care offered by our providers"; (b) WHR staff member Marley's response stating the visit had "turned into what feels like an extensive audit"; and (c) Marley's written selective enforcement challenge, asking whether similar compliance procedures had been initiated against Moonlight Mountain locations; Magellan never answered this inquiry.

10/29/25, 11:46 AM                                    Gmail - Fw: Follow up Visit

 Gmail                                    **Elhadi Benkirane <benkirane.hadi@gmail.com>**

## Fw: Follow up Visit

**Elhadi Benkirane** <elhadi@recoveryatwhitehouse.com>                    Mon, Oct 27, 2025 at 7:02 AM
To: Elhadi Benkirane <benkirane.hadi@gmail.com>

Get Outlook for iOS

**From:** Nansel, Rebekah <nanselr@magellanhealth.com>
**Sent:** Thursday, May 8, 2025 1:18:35 PM
**To:** Tovar, David <tovard1@magellanhealth.com>; Marley <marley@recoveryatwhitehouse.com>
**Cc:** Welsh, David <welshd@magellanhealth.com>; Pullen, Samuel <pullens@magellanhealth.com>; HAYWOOD, TABATHA <haywoodt@magellanhealth.com>; Miller, Erin <millere3@magellanhealth.com>; Bly, Jennifer <blyj@magellanhealth.com>; Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** RE: Follow up Visit

Marley,

Just checking in  to get something on the calendar. Does your team have time to connect either Monday or Tuesday afternoon next week?

Rebekah Nansel, MBA, BSW

Provider Relations Manager, Magellan Healthcare of Idaho

Magellan Health

**M**  208.691.5944 | **E** nanselr@magellanhealth.com

magellanhealth.com



***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us by telephone at 908.343.7214 Thank you.

**From:** Tovar, David <tovard1@magellanhealth.com>
**Sent:** Tuesday, May 6, 2025 3:35 PM
**To:** Marley <marley@recoveryatwhitehouse.com>; Nansel, Rebekah <nanselr@magellanhealth.com>
**Cc:** Welsh, David <welshd@magellanhealth.com>; Pullen, Samuel <pullens@magellanhealth.com>; HAYWOOD, TABATHA <haywoodt@magellanhealth.com>; Miller, Erin <millere3@magellanhealth.com>; Bly, Jennifer <blyj@magellanhealth.com>; Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** RE: Follow up Visit

Good afternoon, Marley.

As part of our Provider Network initiatives, our team has been conducting and will continue to conduct in-person visits with providers across the state. These visits allow us to better understand the services offered, tour facilities, and learn more about each provider's clinical programs and initiatives. These are informal visits by nature and allows our team to understand the full continuum of care offered by our providers participating in the Idaho Behavioral Health Plan (IBHP).

We would like to meet with your PHP and IOP teams to follow up on questions we have about your program. It sounds like Rebekah provided direction on how to access our provider handbook and provider handbook appendix C, however, if you need it again, it can be found on our public facing website and is available to all providers.

Provider Handbook

I would like to understand more about the records requests you mentioned in your email. Can you share who and what was requested? As part of quality initiatives at Magellan, we conduct Treatment Record Reviews (TRR) which is a standard review tool used for all behavioral health records. These are conducted by our Quality team and are selected on their discretion. You can find information about Treatment Record Reviews in our provider handbook and can also find this document on our website.

Treatment Record Review

We believe the intent and scope of the additional questions are clear. We would like to gain further understanding of your programming, which includes both the IOP and PHP program.

Please let us know if you have further questions. I believe Rebekah will be coordinating with your team to find time to meet.

David Tovar, MBA, LMSW

Director, Network

Magellan Healthcare, Inc.

**Email:** Tovard1@magellanhealth.com | **Phone:** 208-509-1477

https://www.magellanhealthcare.com/magellan-of-idaho-2-2/



Check out the new provider trainings: Events and training | Magellan Healthcare

IBHP provider handbook: Handbooks and forms | Magellan Healthcare

Getting Paid: Getting paid | Magellan Healthcare

FAQs: Frequently asked questions | Magellan Healthcare

---

**From:** Marley <marley@recoveryatwhitehouse.com>
**Sent:** Tuesday, May 6, 2025 3:54 PM
**To:** Nansel, Rebekah <nanselr@magellanhealth.com>
**Cc:** Tovar, David <tovard1@magellanhealth.com>; Welsh, David <welshd@magellanhealth.com>; Pullen, Samuel <pullens@magellanhealth.com>; HAYWOOD, TABATHA <haywoodt@magellanhealth.com>; Miller, Erin <millere3@magellanhealth.com>; Bly, Jennifer <blyj@magellanhealth.com>; Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** Re: Follow up Visit

> EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Hi Rebekah,

I'm a bit confused. I was under the impression that our initial meeting would be more of an introductory discussion or meet-and-greet. However, it now appears to be evolving into what feels like an extensive audit.

Could you please clarify the actual purpose of this meeting?

If this is in fact an audit, it would be appropriate for us to be formally informed of the scope and reason beforehand.

What concerns me further is that after payment was rendered and I requested the provider handbook, I was met not only with multiple medical records requests but also a site visit. The extensiveness of all of this, particularly in that sequence, gives the impression of a bait-and-switch, which is troubling.

Have similar procedures been initiated with the Moonlight Mountain locations—the facilities that received the majority of the sober housing funding and continue to experience high rates of relapse? I ask this not to deflect, but to understand whether this process is being applied consistently and fairly across providers.

I would appreciate it if you could provide clarification in writing regarding the intent and scope of this process so we can proceed accordingly.

Thank you,

Marley West

*Executive Assistant*

*WHR- IOP*

**White House Recovery- Post Falls**

*Direct line* (323) 522-7000

*Admissions line* (800) 510-5393

---

**From:** Nansel, Rebekah <nanselr@magellanhealth.com>
**Sent:** Tuesday, May 6, 2025 12:11:20 PM
**To:** Marley <marley@recoveryatwhitehouse.com>
**Cc:** Tovar, David <tovard1@magellanhealth.com>; Welsh, David <welshd@magellanhealth.com>; Pullen, Samuel <pullens@magellanhealth.com>; HAYWOOD, TABATHA <haywoodt@magellanhealth.com>; Miller, Erin <millere3@magellanhealth.com>; Bly, Jennifer <blyj@magellanhealth.com>
**Subject:** Re: Follow up Visit

Marley,

Good morning. We have some additional questions and clarifications about WHR programming and staffing. We would like to come back for another visit and meet with you and the team including the therapist and MD to further discuss the PHP and IOP services.

What days and times work best for you in the next week?

Rebekah Nansel, MBA, BSW

Provider Relations Manager, Magellan Healthcare of Idaho

Magellan Health

**M**  208.691.5944 | **E** nanselr@magellanhealth.com

magellanhealth.com



***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us by telephone at 908.343.7214 Thank you.

**2 attachments**



**image001.jpg**
4K

**image002.png**
14K

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

.

ELHADI BENKIRANE,

         *Plaintiff,*

                                     Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

         *Defendants.*

# EXHIBIT D

David Tovar's public professional profile identifies him as Co-Owner of
Treasure Valley Counseling and Wellness PLLC, a behavioral health clinic
established in July 2023 that directly competes with WHR for the same
Medicaid patient population in the same North Idaho service area.
Establishes Tovar's personal financial stake in WHR's elimination from
the IBHP network.

 **Psychology Today**   Therapists ⌄   City, Zip or Name   🔍      ⊕ US   Log In   **Sign Up and Get Listed**

**David M Tovar** ✔
Clinical Social Work/Therapist, MBA, LMSW

📞 **(208) 408-1198 or** <u>Email Me</u>

of anxiety disorders, including generalized anxiety, panic disorder, social anxiety, phobias, and OCD. Using CBT and Solution-Focused approaches, I provide practical tools to reduce symptoms, manage triggers, and build long-term resilience.

The biggest challenge isn't the journey. It's deciding to begin. Start anyway. As the Co-Owner of Treasure Valley Counseling and Wellness PLLC our goal is to ensure our patients get the treatment they need, exactly when they need it.

> Call or <u>email</u> David M Tovar now for a **free 15 minute consultation - (208) 408-1198**



(208) 408-1198

📍 Telehealth
3782 East Amity Avenue
Nampa, ID 83687  map

| Email Me | My website | Share |

66 *I am available for both In-Person and Telehealth appointments. My goal is to align with each patients preference.*

$ $150 Per Session, I accept insurance ›

⚌ Individual one-on-one therapy ›

## Finances

$ **Fees**

Individual Sessions $150



**David M Tovar**
Clinical Social Work/Therapist, MBA, LMSW

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT E

IBHP Contract Amendment No. 1 (State of Idaho / Magellan Healthcare, Inc., dated Feb. 14, 2024), the operative $1.216 billion state contract, cited for: (a) designation of David Welsh as Magellan's sole Contractor Contact with the State (p. 1); (b) Welsh's digital signature binding Magellan to the contract (p. 10); (c) Section 4.4 requiring Magellan to notify IDHW within two business days of any key-personnel change and provide resumes, confirming state approval of Welsh and Tovar; (d) mandatory deliberate decision-making timelines for medical necessity reviews (Sections 2.7, 2.27); (e) continuity of care, intensive care coordination, and crisis system management obligations (Sections 2.1, 2.14, 2.15); and (f) conflict-free service obligations (Section 39.1).



## State of Idaho Contract NumberCPO20231744, RC4619
## Amendment No. 1
### Parties

| Agency | Contractor |
|---|---|
| Department of Administration<br>650 W. State St.<br>Boise, ID 83702 | Magellan Healthcare, Inc.<br>14100 Magellan Plaza<br>Maryland Heights, MO 63043 |

### Contract Summary

| | |
|---|---|
| Contract Name:Idaho Behavioral Health Plan<br>Contract Description:Idaho Behavioral Health Planfor the Idaho Department of Health and Welfare<br>OriginalEffective Date:6/16/2023<br>CurrentExpiration Date:6/30/2028 | CurrentContract Value:$1,216,000,000.00<br>Estimated Lifetime Value:$1,216,000,000.00<br>Contract Usage Type:Agency |

### Agency Contacts

| Contact Name | ContactType | Contact Email |
|---|---|---|
| DOPContract Administration | Contract Administrator | contractadmin@adm.idaho.gov |
| Ashley Porter | Contract Monitor | Ashley.porter@dhw.idaho.gov |
| Adam Panitch | Contract Manager | Adam.panitch@dhw.idaho.gov |

### Contractor Contacts

| Contact Name | Contact Phone | Contact Email |
|---|---|---|
| DavidWelsh | 908-343-7214 | Welshd@magellanhealth.com |

### Recitals

1.  The Parties entered into a Contract (CPO20231744) for Idaho Behavioral Health Planfor the Idaho Department of Health and Welfare, effective June 16,2023.

2.With this Amendment No. 1, the Parties desire to modify the service start date and end date,modify various requirements throughout the Contract,and obtain Contractor certification of Idaho Code 67-2359, as further detailed below.

### Agreement

Based on the above recitals, and good and valuable consideration, the receipt of which is hereby acknowledged, the Contract is amended as follows:

1.  The Service Start Date is extended from March 1, 2024 to July 1, 2024. The Service End Date is extended from February 29, 2028 to June 30, 2028.

2.  The Contract sections with applicable modifications areasfollows:

2.1    Appendix A, Definitions, Intensive Care Coordination (ICC):
ICC is an administrative function required to be provided through the Contractor's organization. ICC is care planning and coordination through a single consistent care coordinator for adults with SPMI or SMI and for youth whose CANS score indicates they need a higher level of care, or who are transitioning from an out-of-home placement such as ~~therapeutic~~ treatment foster care, an acute psychiatric hospital, or a psychiatric residential treatment facility (PRTF) and when intervention is needed to keep a child from being moved to an out-of-home placement or involved in multiple child-serving systems related to their mental health needs. ICC includes development of a coordinated care plan through facilitation of team meetings that include the Intensive Care Coordinator, a member and or their family, services providers, and support identified by a member to ensure collaborative communication and decision-making across health and human service systems.

2.2    Appendix B, Scope of Work, Section 3.2.6.2:
Contractor must



2.3    Appendix B, Scope of Work, Section 4.1.4:
Chief Medical Officer ~~(local)~~

2.3    Appendix B, Scope of Work, Section 4.4:

The Contractor must notify the IDHW, in writing, within two (2) business days when changes in key personnel listed in Appendix B, Section 4.1, occur, as well as changes in other management and supervisory level staff. The Contractor must provide the IDHW with resumes of the individuals key personnel hired within two (2) business days of hire.

2.4    Appendix B, Scope of Work, Section 6.3.1.3:

Add sub-section 6.3.1.3.a: sliding fee schedules must be implemented by a date mutually agreed upon by the Contractor and IDHW.

2.5    Appendix B, Scope of Work, Section 8.5.1.1:



2.6    Appendix B, Scope of Work, Section 13:
The sub-section numbers are corrected as follows:
13.6.4
13.6.4.1
13.6.4.2
13.6.4.3
13.6.4.4
13.6.4.5

13.6.4.
5
13.6.4.
6

2.7 AppendixB, Scope of Work, Section 14:
Add sub-section 14.2.5.3.2.1: PRTF placements must be reviewed for medical necessity within five (5) business days.

2.8 Appendix B, Scope of Work, Section 17.2.4.8:
Idaho Suicide Prevention Hotline Idaho Crisis and Suicide Hotline: Contractor shall manage and respond to 988 calls to assist with developing the crisis continuum of care.

2.9 Appendix B, Scope of Work, Section 22.1.2.3:
Life Skills in accordance with IDAPA 16.07.17.375 and IDHW SUD Life Skills Standards (available at the time this ITN was posted at: https://healthandwelfare.idaho.gov/providers/behavioral-health-providers/behavioral-health-service-providers)

2.10 Appendix B, Scope of Work, Section 22.1.2.4:
Staffed Safe and Sober Housing for Adults in accordance with IDAPA 16.07.17.380 (adolescents) and IDAPA 16.07.17.385 (adults) and IDHW SUD Safe and Sober Housing Standards (available at the time this ITN was posted at: https://healthandwelfare.idaho.gov/providers/behavioral-health-providers/behavioral-health-service-providers)

2.11 Appendix B, Scope of Work, Section 31.3.1.1:
Make a best effort to conduct an initial screening of each member's needs, within ninety (90) calendar days of the member populating on the eligibility file; Within ninety (90) calendar days of a member becoming Medicaid eligible, make a best effort to conduct follow up on initial screenings completed by the State for newly eligible Medicaid members, when the screening indicates a need for behavioral health services;

2.12 Appendix B, Scope of Work, Section 33.3.1.1:

2.13 Appendix B, Scope of Work, Section 34.3.1.1:

2.14 Appendix B, Scope of Work, Section 39.1:
The Contractor must provide a statewide, evidence-based high-fidelity Wraparound program for members who meet the requirements for such services. The Wraparound program must offer appropriate treatment, rehabilitation, and support services with a person-centered, recovery based approach for YES Class Members. Wraparound must be provided as an administrative function by Contractor staff or an IDHW-approved subcontracted Wraparound specialty program. Wraparound may be provided by a specialty network as a benefit expense as long as the providers within the specialty network do not provide any other services to members in order to maintain conflict-free service provision.

2.15 Appendix B, Scope of Work, Section 46.2.1:
The Contractor must collaborate with the Idaho Crisis and Suicide Hotline (ICSH) to integrate their operations within the established a Crisis Call Center that provides effective telephonic crisis intervention or efficiently connects individuals experiencing a behavioral health crisis intervention and support to needed care. The system must use technology for real-time coordination across a system of care and leverage big data for performance improvement and accountability across systems every minute of every day. The system must provide high-touch support to individuals and families in crisis that adheres to National Suicide Prevention Lifeline (NSPL) standards

(currently                                    available                                    at:
https://suicidepreventionlifeline.org/bestpractices/#:~:text=Lifeline%20adopted%20these%20standards%20as%
20policy%2C%20and%20verified,and%20Buffers%20along%20with%20the%20subcomponents%20for%20eac
h)

2.16    Appendix B, Scope of Work, Section 46.2.2:
The Contractor must provide crisis intervention services for any caller who is experiencing a behavioral health crisis at the same toll-free line dedicated to members as outlined in Section 11, Customer Service System as the Crisis Call Center telephone line. The Contractor may transfer administrative calls to customer service staff but must ensure calls are appropriately handled to address the needs of individuals experiencing a behavioral health crisis as outlined in this section.

2.17    Appendix B, Scope of Work, Section 46.2.3.13:
Answers all calls with a live person who is under the supervision of a licensed clinician, as follows:

2.18    Appendix B, Scope of Work, Section 46.2.3.7.1:
911; and

2.19    Appendix B, Scope of Work, Section 46.2.3.7.2:
The Idaho Care Line (211); and

2.20    Appendix B, Scope of Work, Section 46.2.3.7.3:
The Idaho Suicide Prevention Hotline.

2.21    Appendix B, Scope of Work, Section 46.2.3.21:
Provides connection to Nurse On-Call services twenty-four (24) hours per day, seven (7) days per week to answer general healthcare questions from callers to provide them with general health information and self-care instructions;

2.22    Appendix B, Scope of Work, Section 46.2.4.3:
Coordinate Integrate with the Idaho crisis and suicide hotline contractor/subgrantee on managing and responding to 988 calls, texts, and chats. , The Contractor must work with the IDHW to evaluate and develop this coordination in alignment with the Federal Communications Commission (FCC), SAMHSA, and Vibrant Emotional Health adopted rules, standards, and timelines;

2.23    Appendix B, Scope of Work, Section 46.2.4.4:
Publicize the single toll-free crisis telephone number (988) throughout Idaho for all Idahoans and include it prominently on the Contractor's website, the Member Handbook, member newsletters and as a listing in the resource directory of local 411 telephone books; and

2.24    Appendix B, Scope of Work, Section 46.2.6:
███████████████████████████████████████████████████████████████

2.25    Appendix B, Scope of Work, Section 46.4.4.11:
Engage Encourage family and friends to engage in crisis care and encourage recipients of services to authorize disclosure of protected health information to family and friends.

2.26    Appendix B, Scope of Work, Section 46.4.4.17:
For Individuals with OUDs, offer crisis stabilization services that provide access to all FDA approved MAT options

2.27    Appendix B, Scope of Work, Section 48.1.4:
The Contractor must review requests for services that fall under EPSDT for medical necessity within fourteen (14) business days of receipt of a completed request and medical history information, ~~except requests for PRTF placement must be reviewed for medical necessity within five (5) business days~~. When the Contractor's review is dependent upon the receipt of additional information, the Contractor must request additional information from the family or primary care physician (or other as indicated). The Contractor must have a policy for situations when information is insufficient to make a determination, which must be approved by the IDHW. The Contractor must process expedited requests and must notify members and providers of the determination within seventy-two (72) hours of the request per App. B, Section 15, Adverse Benefit and Appeal Determinations Tracking System, of the Contract.

2.28    Appendix E, Service Matrix:
Column "Section": Parenting with Love and ~~Logic~~ Limits

Column "Service": Parenting with Love and ~~Logic~~ Limits - An evidence-based program that integrates group and family therapy into one system of care. The PLL program is curriculum based and allows Members to meet with other families with other similar issues.

2.29    Appendix K, Reports, NON-01, Report Description:
The ~~YES Over 300%~~ Non-Medicaid YES Services and Demographics Report must display a detailed view of member level information for members who do not qualify for Medicaid and/or opt out of the 1915(i) SPA for SED eligibility. The detailed view of this report must include:

1) Demographics:
    a) Full name
    b) Date of birth
    c) Gender
    d) ~~Social Security Number (SSN)~~ Unique Identifier, including MID (if applicable)
    e) Address (current and previous)
    f) Region
    g) Phone
    h) Email
    i) Ethnicity
    j) Race
    k) Any additional demographic information gathered

2) Services – screening and referral:
    a) Individuals screened for ~~over 300% FPG YES funding~~ non-Medicaid YES funding including those that are over the income limits for the 1915(i) SPA for SED (300% of FPG) and those who opt-out of that program
    b) Date members were screened
    c) Location of screening (which agency?)
    d) Members who qualify but have not engaged in services
    e) Referral of services:

        i) Service name
        ii) Service quantity
        iii) Service cost
        iv) Service start date
        v) Service end date
        vi) Referral created date
        vii) Referred to agency

 3) Services received by member:
    a. Service received
    b. Date of service
    c. Duration (time) of service

d. Utilization of total services member was referred for
e. Any additional notes/details of the service

4) Billing:
a) Claim items billed for Wraparound services
b) Total amount paid

The summary view must also include:
1) Total number screened for eligibility
2) Number screened as eligible
3) Number screened as not eligible

The summary view must display a summary of the above elements, and allow the user to display basic descriptive statistics, including but not limited to mean, median, and standard deviation, by the following:
1) Calendar year
2) Fiscal year (to date)
3) Month
4) Week
5) Day
6) Region
7) Race/ethnicity
8) Gender
9) Utilization of a service

2.30   Appendix K, Reports, MED-01, Report Description:
The 1915(i) Maintaining Eligibility Report must contain all information pertaining to the ~~requirements of 1915(i) State Plan Option Medicaid members~~ compliance with eligibility requirements of Medicaid members enrolled in Medicaid via the 1915(i) State Plan Amendment for Serious Emotional Disturbance (SED), also called Medicaid's YES Program. The requirements of these members to maintain eligibility are to:

1) Have a CFR compliant ~~PCSP approved annually through the Contractor~~ person-centered service plan (PCSP) completed within 90 days of becoming eligible and at least annually that is approved through the Contractor
2) ~~Participate in behavioral health services within the last 30 calendar days~~
3) Utilize at least one 1915(i) service(s) at least one time annually
4) Participate in an Independent Assessment (IA) annually through the identified IA contractor

Member types include:
1) ~~Traditional Medicaid~~
    ~~a) Ages 0-17 with Foster Care condition code~~
2) ~~Youth Empowerment Services (YES)~~
    ~~a) Ages 0-17 with rate code 44~~
    ~~b) Ages 0-17 with YES condition code~~
1) Ages 0-17 with rate code 44
2) Ages 0-17 with YES condition code

The report must include all members from 0-17 with a YES condition code~~, Foster Care condition code and all members with~~ and/or rate code 44. The member information must include:
1) Member first and last name
2) Medicaid Identification Number (MID)
3) PCSP approval date
4) PCSP end date
5) Date of last 1915(i) service received
6) Name (or CPT code) of last 1915(i) service received

7) 1915(i) compliance indicators of YES/No/NEW based on:
  a. YES: If they have a current PCSP and received ~~behavioral health service in past 30 calendar days~~ a 1915(i) service within the past year
  b. NO: If they do not have a current PCSP but have received a ~~behavioral health service in past 30 calendar days~~ 1915(i) service within the past year
  c. NO: If they ~~do~~ have a current PCSP and have not received ab ~~ehavioral health service in past 30 calendar days~~ 1915(i) service within the past year
  d. NEW: If the member gained YES Program eligibility within the past 90 days.

2.31    Appendix K, Reports, IDHW-01, Report Description:
The Contract Transition Status Report must include:

1) Updated transition implementation plan and responsibility matrix
2) Tasks that are behind schedule
3) Dependent tasks for tasks behind schedule
4) Items requiring the IDHW's Contract Manager's attention
5) Anticipated staffing changes
6) Outstanding issues, current status and plans for resolution
7) Any information set forth in the Contract and necessary for the transition process
8) Identification of any issues that can affect schedules for project completion including supporting information for:
9) Identification

~~10)~~    a. Time frames
~~11)~~    b. Critical path effects
~~12)~~    c. Resource requirements
~~13)~~    d. Materials for unplanned items

2.32    Appendix K, Reports, IDHW-10, Report Description, Section B:
The summary view must display a summary of the above elements, and allow the user to display basic descriptive statistics, including but not limited to mean, median, and standard deviation, by the following:

1) Calendar year
2) Fiscal year (to date)
3) Month
~~4) Week~~
~~5) Day~~
6) Region,
7) Race/ethnicity
8) Gender

2.33    Appendix K, Reports, IDHW-11, Report Description, 1): Demographics
a) Full name
b) Date of birth
c) Gender
d) ~~SSN~~ Unique identifier, including MID (if applicable)
e) Address (current and previous)
f) Region
g) Phone
h) Email
i) Ethnicity
j) Race
k) Any additional demographic information gathered, as agreed upon by the Contractor and the IDHW

2.34    Appendix K, Reports, IDHW-11, Report Description

2) Services:
a) Referral of services by member:
i) ~~Service name~~
ii) ~~Service quantity~~
iii) ~~Service cost~~
iv) ~~Service start date~~
v) ~~Service end date~~
i) Referring Provider Name
ii) Referring Provider Agency
iii) Referral created date
iv) Referred to agency
b) Referred services received by member:
i) Services received
ii) Date(s) of service referred to
iii) Duration (time) of service was referred for
iv) Utilization rate of total services member was referred for
v) Any additional notes/details of the services


3) Billing:
a) Claim items billedforwraparound services by member b)
Total amountpaidforWraparound service by member

The summaryviewmustdisplay a summary of the above elements, and allow the user to display basic
descriptivestatistics,including but not limited to mean and median, ~~and standard deviation,~~ by the following:
1) Calendaryear
2) Fiscalyear(todate)
3) Month
4) Week
5) Day
6) Region
7) Race/ethnicity
8) Gender
9) Utilizationofaservice
10) LengthofWraproundServices
11) NumberofCareCoordination Hours by 30, 60, and 90 days


2.35    AppendixK,Reports,IDHW-15, Report Description:
The CustomerServiceandCall Outcomes Report must identify all calls received the previous month, grouped by
memberandprovider(which may include other stakeholders). The report must include:

1) Numberofcallsreceived
2) The percentageofcallsanswered within 30 seconds
3) Daily averagetimeonhold
4) Abandonmentrates
5) The percentageofcallsthat received a busy signal/were on hold
6) The percentageofcallsthat were dropped out of the daily call volume

2.36    Appendix K, Reports, IDHW-16, Report Description, 1):
Number of calls received:
a) Direct calls
b) Calls passed through from partner agencies
c) Calls from ~~Idaho Suicide Prevention Hotline (ISPH)~~Idaho Crisis and Suicide Hotline (ICSH)
d)Calls transferred to the ~~(ISPH)~~(ICSH)
e) Calls transferred to and from Mobile ResponseTeam (MRT)
f) Incoming and outgoing calls to/from 911 and 988

2.37    Appendix K, Reports, IDHW-22, Report Description, 5):
~~SSN (minimum of last four)~~ Unique identifier, including MID (if applicable)

2.38    Appendix K, Reports, IDHW-26, Report Description:
Add 13) Region of admitting provider

2.39    Appendix K, Reports, IDHW-32 (M), IDHW-33 (Q), and IDHW-34 (A), Report Description, 5):
Provider ~~SSN~~ Unique identifier

2.40    Appendix K, Reports, IDHW-58, Report Description, Table 16:
This section provides profiles of adult members with SMI and children with SED receiving specific EBPs noted below in the reporting year. The reporting year must be the latest State fiscal year for which data is available. Report must include: 1) supported housing, 2) supported employment, 3) Assertive Community Treatment (ACT), 4) ~~Therapeutic~~ Treatment Foster Care (TFC), 5) Multisystemic Therapy (MST), and 6) Functional Family Therapy (FFT).

3. Pursuant to Idaho Code 67-2359, the Contractor certifies that it is not currently owned or operated by the government of China and will not for the duration of the Contract be owned or operated by the government of China.

4. Except as expressly modified in this Amendment, all other terms and conditions of the Contract remain in full force and effect.

5. This Amendment is effective upon the date of the last signature below. In no event will this Amendment be effective until executed by the Department of Administration.

***Signature Page Follows***

**Department of Administration**

Signature: _____

Name: _____Chase Croft_____

Title: _Contract Administrator_

Date: _2/15/2024_

**Magellan Healthcare, Inc.**

Signature: __David Welsh__  Digitally signed by David Welsh Date: 2024.02.14 14:07:24 -07'00'

Name: _____

Title: _____

Date: _____

**Reviewed by:**

**Department of Health and Welfare (CAPS)**

Signature: __Patrick Murphy__  Digitally signed by Patrick Murphy DN: cn=Patrick Murphy, c=US, o=Department of Health and Welfare, ou=CAPS, email=Patrick.Murphy@dhw.idaho.gov Date: 2024.01.29 08:37:08 -07'00'

Name: _____

Title: _____

Date: _____

**Department of Health and Welfare (Program)**

Signature: __Juliet Charron__  Digitally signed by Juliet Charron DN: cn=Juliet Charron, c=US, o=Idaho Department of Health & Welfare, ou=Medicaid Division, email=juliet.charron@dhw.idaho.gov Reason: I am approving this document Date: 2024.01.28 18:23:16 -07'00'

Name: _Juliet Charron_

Title: _Medicaid Administrator_

Date: _January 28, 2024_

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT F

Magellan's own internal credentialing system records at the time of termination, reflecting credentialed providers currently associated with WHR, including Ari S. Labowitz (MA), Aneel Ahmed Ursani (MD), Nina Kellie Abul Hus (MD), and Samantha Arnold (MSW). These records directly contradict the stated basis for termination for alleged staffing and credentialing deficiencies.

We are doing everything on our end—we now need Magellan to meet us halfway.

Sincerely,
**Elhadi Benkirane**
Executive Director
WHR IOP LLC

805.630.7445

---

**From:** Marisa Sisk
**Sent:** Monday, March 31, 2025 7:06 PM
**To:** Elhadi Benkirane; White House Recovery & Detox; Marley
**Subject:** Fwd: WH recovery

Dr. Marisa A. Sisk, M.S., Psy.D.

Begin forwarded message:

> **From:** "Nansel, Rebekah" <nanselr@magellanhealth.com>
> **Date:** March 31, 2025 at 1:33:39 PM HST
> **To:** White House Recovery & Detox <Admin@recoveryatwhitehouse.com>
> **Cc:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>, "Tovar, David" <tovard1@magellanhealth.com>, Marisa Sisk <marisa@mdrnsolutions.com>
> **Subject: RE: WH recovery**

Good afternoon,

We just finished meeting with Marisa about claims. We have reviewed all the documents that have been submitted for both Whitehouse Recovery LLC Alesa site and WHR IOP LLC. Lincoln Site

Before we can move forward reprocessing claims, we must ensure that WHR IOP Lincoln location is set up properly.

Based on the paperwork submitted to us we have one location set for PHP and one set for IOP. We understand this in not accurate and the Lincoln location is to be both PHP and IOP.

We need an updated **Sites and Services form** that reflects only the services that are going to be billed out of the Lincoln location. **I am happy to walk through this**

**form with you via teams meeting.** I am attaching it here as well. <u>**Please only indicated the services you will be billing for at the Lincoln location on the form.**</u>

**Staff Rosters:**

<u>**Based on rosters submitted for White House recovery Alesa location, we have three staff members set at that location.**</u>



<u>**We have one active provider based on rosters for Lincoln Location based on the submitted roster.**</u>



<u>**We need to have an accurate roster for the Lincoln location that has all the providers who are serving members listed in this location.**</u>

**I have attached a blank roster for you to complete for the Lincoln location. Please return this to me via email.**

Once things two thing are completed (new SOS and roster)  and sent back to us we can ensure that WHR IOP is set up correctly and ready to bill<u>**. This will not take long.** </u>Once this happens Marisa will get an email from me outlining exactly what we need in claims and **we will expedite the process for you** ☺

Please let me know if you have any questions. I am more than happy to walk through the SOS form with you to ensure that it has everything needed ☺

Have a wonderful evening ☺

Rebekah Nansel, MBA, BSW
Provider Relations Manager, Magellan Healthcare of Idaho
Magellan Health
**M** 208.691.5944 | **E** nanselr@magellanhealth.com
magellanhealth.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,
         *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,
         *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT G

May 19, 2025, deficiency letter from David Tovar to WHR, identifying ten deficiency categories that Tovar asserted WHR had failed to satisfy, and establishing the formal basis on which Magellan subsequently issued the termination letter. Signed by Tovar while he held a management role in a directly competing behavioral health clinic.



PERSONAL AND CONFIDENTIAL
VIA EMAIL AND MAIL
RETURN RECEIPT REQUESTED

May 19, 2025

WHR Intensive Outpatient Program
Attn: Elhadi Benkirane, Owner
305 N. Lincoln St.
Post Falls, ID 83854

Subject: Formal Notification of Deficiencies Identified During Recent Site Review

Dear Mr. Benkirane,

This letter serves as formal notification of extensive deficiencies in your Substance Use Disorder (SUD) Partial Hospitalization (PHP) and Intensive Outpatient (IOP) programming identified during the recent site visits and meetings conducted on May 1 and May 12, 2025, between representatives of Magellan Healthcare, Inc. (Magellan) and the WHR Intensive Outpatient Program (WHR IOP). The findings below are based on direct observations and staff interviews. The following details explain our findings.

**Summary of Deficiencies:**

**1. Staffing and Credentialing**

- *Findings*: Multiple staff providing services for SUD PHP and SUD IOP lack the required credentials or degrees as mandated by Idaho and Magellan standards. Several staff have no relevant licensure, certification, or bachelor's degree. Examples include staff with lived experience and no applicable peer certifications, incomplete degrees, or non-clinical certifications providing direct services. Although Marley West holds a Bachelor of Science in counseling, she does not possess requisite SUD credentials [e.g., Certified Alcohol and Drug Counselor (CADC), Substance Use Disorder Associate (SUDA)] necessary for paraprofessional treatment roles for SUD PHP and SUD IOP services.

**2. Supervision of Non-Credentialed Staff**

- *Findings*: Required individual supervision for paraprofessional staff is not occurring or documented. Supervisors, including the Clinical Director, were seemingly unaware of documentation requirements and expressed confusion regarding supervision standards. Supervisory protocol requirements, including individual supervision for paraprofessionals at least monthly, are not being met. Staff reported



that only groupsupervision occurs, and at the time of the visit there is no documentationof individual supervision. This is not compliant with Magellan's supervisory standards.

## 3. Assessment and Treatment Planning

- *Findings*: Comprehensive Diagnostic Assessments and American Society of Addiction Medicine (ASAM) Assessments are being completed by staff without the necessary licensure or training. These assessments must be conducted by a master's-level clinician. Although ASAM assessments may be completed by paraprofessionals, it is only with proper credentials; e.g., CADC and with appropriate training and supervision of a licensed provider qualified for supervision per Idaho Board of Alcohol Drug Counselor Certification (IBADCC). Current practice does not meet this requirement, posing clinical risk.

## 4. Individual, Group, and Family Therapy

- *Findings*: Individual therapy is available only upon request and subject to WHR staff availability and is being conducted via telehealth, which is not permitted for PHP services. Group therapy is not provided currently, per staff report, as there are no qualified clinicians to run psychotherapy/process groups. Instead, only psychoeducation and skills-building groups led by paraprofessionals are offered. Therapy groups are core components of PHP and IOP treatment programs. Family therapy is also only available upon request and is delivered via telehealth, which again is not permitted in PHP programming.

## 5. 24-Hour Crisis Services

- *Findings*: Crisis response is managed by a paraprofessional staff member, Marley West without documented crisis intervention training. This does not meet the training requirements for crisis response personnel in a PHP or IOP setting.

## 6. Skills Building Activities

- *Findings*: Skills-building groups are facilitated by staff lacking the required Skills Training and Development course, SUD credentials, or degrees in the human services field, in violation of Magellan standards.

## 7. Psychiatric and Medical Services

- *Findings*: Psychiatric evaluations and ongoing medical oversight are only provided via telehealth by Dr. Nina, who is not onsite. PHP services, including psychiatric and



physical examinations, must be delivered in person. Additionally, there is no Registered Nurse or higher-credentialed medical staff available 24/7 as required.

**8. Care Coordination and Discharge Planning**

- *Findings*: Case management and care coordination tasks are assigned to paraprofessional staff as reported by agency staff. Most of the paraprofessionals lack the necessary educational background as required by our Appendix C. pg. 33. This does not comply with the minimum requirement of a bachelor's degree in a human services field for case managers.

**9. Program Structure and Documentation**

- *Findings*: There is insufficient differentiation between PHP and IOP levels of care, with members from both programs mixed in groups. Individualized treatment planning based on ASAM assessment and clinical needs is not evident. There is also a lack of daily onsite clinical evaluation for risk and safety, and no formal process for monitoring high-risk clients; according to staff, this is more of an informal process where the onus is on the patients to reach out.

**10. Privacy Concerns**

- *Findings*: Members' music recordings, which may contain personal or health information, are being stored without clear privacy protocols. Clarification is needed on how this material is handled and protected.

In light of the extensive deficiencies identified and the absence of core elements essential to the provision of safe, ethical, and high-quality care, we are continuing our internal review and evaluation to determine the appropriate course of action. The findings reveal a significant lack of clinical oversight and an insufficient understanding of the fundamental requirements for PHP and IOP services, as well as the intensive needs and potential clinical risks associated with the individuals served.

Magellan requires all contracted providers to deliver care that is clinically appropriate, ethically sound, and fully compliant with the standards of care outlined in our handbooks and guiding documents, thereby ensuring that the needs of our members are consistently and effectively met. We have attached signed copies of the Provider Agreement, Supervisory Protocol dated July, 2024 for your reference. The provider handbook and appendix C documents are available online at www.Magellanofidaho.com>for providers.> provider handbooks. We also previously shared these resources with WHR staff.



We will follow up with your organization in the near future with our determination of next steps.

Sincerely,


David Tovar
DavidTovar,MBA, LMSW
Director, Network
Magellan Healthcare, Inc.


Cc:      Provider file
         Magellan Legal Department

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

          *Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.

DAVID WELSH; DAVID TOVAR; and

DOES  1 through 10,

          *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT H

Idaho Secretary of State records confirming David Tovar is listed as Manager of Treasure Valley Counseling and Wellness PLLC, established in July 2023, a behavioral health clinic that directly competes with WHR for the same Medicaid patient population. Corroborates Exhibit D as to Tovar's management role in a competing clinic while simultaneously conducting compliance audits against WHR and signing the deficiency letter.

 

0006291824



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**ANNUAL REPORT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee: $0.00

For Office Use Only

**-FILED-**

File #: 0006291824

Date Filed: 6/2/2025 3:58:27 PM

| Entity Name and Mailing Address: | |
|---|---|
| Entity Name: | Treasure Valley Counseling and Wellness, PLLC |
| The file number of this entity on the records of the Idaho Secretary of State is: | 0005273248 |
| Address | 17484 N OWL PEAK AVE NAMPA, ID 83687-7106 |

| Entity Details: | |
|---|---|
| Entity Status | Active-Existing |
| This entity is organized under the laws of: | IDAHO |
| If applicable, the old file number of this entity on the records of the Idaho Secretary of State was: | |

| The registered agent on record is: | |
|---|---|
| Registered Agent | Lisa M Tovar<br>Registered Agent<br>Physical Address<br>824 17TH AVE S # 3<br>NAMPA, ID 83651<br>Mailing Address<br>17484 N OWL PEAK AVE<br>LISA TOVAR<br>NAMPA, ID 83687-7106 |

| The new physical (street) address of the existing agent in Idaho is: | |
|---|---|
| Physical Address | 3782 E AMITY AVE STE 105 NAMPA, ID 83687 |

| The new mailing address of the existing agent in Idaho is: | |
|---|---|
| Mailing Address | 17484 N OWL PEAK AVE NAMPA, ID 83687 |

Limited Liability Company Managers and Members

| Name | Title | Business Address |
|---|---|---|
| ▪ Lisa M Tovar | Manager | LISA TOVAR 17484 N OWL PEAK RD NAMPA, ID 83687 |
| ✚ Treasure Valley Counseling and Wellness PLLC | Manager | 3782 E AMITY AVE STE 105 NAMPA, ID 83687 |
| ✚ David M. Tovar | Manager | 3782 E AMITY AVE STE 105 NAMPA, ID 83687 |

The annual report must be signed by an authorized signer of the entity.

Job Title:  Co-Owner

Page 1 of 2

Page 1 of 2

B1018-2458 06/02/2025 3:58 PM Received by Office of the Idaho Secretary of State



| *Lisa M Tovar* | *06/02/2025* |
|---|---|
| Sign Here | Date |

B1018-2459 06/02/2025 3:58 PM Received by Office of the Idaho Secretary of State

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,                                    Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES 1 through 10,

*Defendants.*

# EXHIBIT I

June 6, 2025, email from Tovar's assistant Amy Topp to Plaintiff titled
"Canceled: Idaho Provider Advisory Committee (PAC 3) Meeting," with
David Tovar copied, effectuating Plaintiff's removal by name from the
PAC without prior notice, without stated reason, and without any
contractual basis tied to WHR's network status. Tovar, who managed a
directly competing behavioral health clinic, remained on the PAC.

 **Outlook**

**Canceled: Idaho Provider Advisory Committee (PAC 3) Meeting**

| | |
|---|---|
| **Organizer** | Topp, Amy <toppa@magellanhealth.com> |
| **Meeting time** | Thu 1/23/2025 1:00 PM - 2:00 PM |
| **Location** | Microsoft Teams Meeting |
| **Recurrence** | Occurs every other fourth Thursday from 1:00 PM to 2:00 PM effective Thu 1/23/2025 until Wed 12/31/2025 |
| **My response** | Not yet responded |
| **Required attendees** | Topp, Amy, Elhadi Benkirane, Tovar, David |
| **Message sent** | Fri 6/6/2025 2:44 PM |

# Microsoft Teams    Need help?

## Join the meeting now

Meeting ID: 272 558 834 579

Passcode: pk7zP6Kq

### Dial in by phone

+1 417-501-2485,,234243566#   United States, Springfield

Find a local number

Phone conference ID: 234 243 566#

For organizers: Meeting options | Reset dial-in PIN

***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health, its subsidiaries or affiliates, that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH, its subsidiaries or affiliates, EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us at . Thank you.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,
> *Plaintiff*,

Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,
> *Defendants.*

# EXHIBIT J

May 27, 2025, termination letter signed by David Welsh and addressed personally to "Elhadi Benkirane, OWNER", not to WHR IOP LLC as a corporate entity, demonstrating Defendants' recognition of Plaintiff's individual role and personal stake in the provider relationship. The letter reserved "the right to assert additional grounds for termination at any time," suggesting the stated deficiency rationale was pretextual. The appeal was directed exclusively to Welsh, the same individual who signed the termination letter.



**PERSONAL AND CONFIDENTIAL**
VIA EMAIL AND MAIL
RETURN RECEIPT REQUESTED

May 27, 2025

WHR Intensive Outpatient Program
Attn: Elhadi Benkirane, Owner
305 N. Lincoln St.
Post Falls, ID 83854

Subject: Notice of Termination

Dear Mr. Benkirane,

This letter serves as formal notification that, effective immediately, your participation in the Idaho Behavioral Health Plan network administered by Magellan Healthcare, Inc. ("Magellan") is hereby terminated for cause. This action is taken pursuant to violations of Section 2 of the *Magellan Health Care Inc. Network Provider Agreement* (the "Agreement") and in accordance with Sections 9.2 (j), (m), (n), and (o) of the Agreement.

The basis for this termination is detailed in our letter of deficiencies dated May 19, 2025. The extensive deficiencies identified constitute direct violations of Sections 2.1, 2.2, and 2.3 of the Agreement*,* as well as breaches of the Supervisory Protocol requirements as set forth in the *Idaho Behavioral Health Plan Supervisory Protocol Addendum* to the Agreement. These violations represent a failure to adhere to established policies and procedures, the provision of clinically inappropriate care, and actions that jeopardize the safety and well-being of our members. Such conduct is unacceptable and cannot be permitted to continue.

Please be advised that the reasons for termination provided herein do not constitute a waiver of Magellan's right to assert additional or supplemental grounds for termination at any time.

As a result of this termination, you are no longer authorized to treat current Magellan members or to accept new Magellan members for treatment. Magellan will not provide reimbursement for any such services rendered after the effective date of this termination, unless otherwise specified by Magellan or as required by applicable state law.



Pursuant to Section 9.5 of the Agreement, and as a courtesy to our members, you are expected to acknowledge Magellan's right to inform affected members of this decision. You are further expected to cooperate fully with Magellan in determining the appropriate form of notification and to direct any questions regarding network status exclusively to Magellan staff, not to members.

Members in active treatment with will be notified that you will no longer be a member of Magellan's provider network and provided with alternative locations for services.

Should your organization wish to be considered for network participation in the future, Magellan will review your application once all identified deficiencies have been fully remediated, and you can demonstrate the implementation of clinically sound, ethical, and high-quality programs. We are willing to discuss the conditions for re-entry into the Idaho Behavioral Health Plan network at that time.

If your group disagrees with this action, you have the right to request an administrative review. Your request must be submitted in writing within thirty-three (33) days from the date of this letter, stating the reasons why you believe the decision should be reversed. The written request and all pertinent documentation must be submitted to the following:

David Welsh, MBA
Executive Director
Magellan Healthcare, Inc.
333 W. Rossi St., Suite 100
Boise, ID 83706

If you have any questions or require further clarification regarding this notice, please contact me directly at (208) 509-1477.

Sincerely,


David Welsh
David Welsh, MBA
Executive Director, Idaho Behavioral Health Plan
Magellan Healthcare, Inc.

Cc: Provider file
Magellan Legal Department

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

        *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

        *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT K

May 27, 2025, remediation submission by Plaintiff: comprehensive written remediation of all ten identified deficiency categories, submitted to Magellan at 10:12 a.m. on the same morning the termination letter was issued. Includes documentation of new clinical staff hired, supervision protocols implemented, PHP/IOP programming separation, 24-hour crisis service protocols, in-person therapy conversion, and updated care coordination and discharge planning. Directly contradicts the stated basis for termination.

 Outlook

## Case Manager Position Filled – Chase Leia Dreksler

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Tue 5/27/2025 10:12 AM

**To**  White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; nanselr@magellanhealth.com <nanselr@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>; welshd@magellanhealth.com <welshd@magellanhealth.com>; Kast, Elizabeth <kaste@magellanhealth.com>

📎 3 attachments (2 MB)

bachelor Chase.pdf; chase d references.docx; chase D.pdf;

Hello,

Per your recent assessment, we have added **Chase Leia Dreksler, Bachelor of Science**, as a case manager to strengthen care coordination and ensure compliance with Magellan requirements.

Thank you for your prompt attention to this update and for your continued support.

Elhadi,

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

     *Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

     *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT L

May 2025 email communications from Plaintiff to Magellan providing staff credentials, updated provider rosters, and compliance documentation throughout the remediation period, demonstrating ongoing, good-faith engagement with Magellan's requirements in the weeks leading up to termination.

 Outlook

## New Licensed Professional Counselor on Staff

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Sun 5/25/2025 5:26 AM

**To** White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; Tovar, David <tovard1@magellanhealth.com>; nanselr@magellanhealth.com <nanselr@magellanhealth.com>; Kast, Elizabeth <kaste@magellanhealth.com>; Welsh, David <welshd@magellanhealth.com>

📎 4 attachments (11 MB)

MARYJENSEN C FORM; MARYJENSEN FBI; MARYJENSEN LPC; MARYJENSEN CNA;

Hello,

I am writing to inform you that we have addressed the previous staffing concern. We have recently hired **Mary Jensen, Licensed Professional Counselor (LPC) and Certified Nurse Assistant (CNA)**, who is properly licensed in the state of Idaho and will be working full-time on-site to provide clinical services.

**Mary Jensen's Licensed Scope of Practice includes:**

- Individual, group, and family counseling for substance use and mental health disorders
- Psychosocial assessments and treatment planning
- Crisis intervention and safety planning
- Psychoeducational group facilitation (substance abuse education, coping skills, relapse prevention)
- Care coordination and aftercare planning
- PHP/IOP program services including daily therapy sessions and intensive case management

Ms. Jensen's license allows her to perform all clinical activities required for our PHP/IOP programs in accordance with Idaho Code 54-3401.

**License Documentation:** Please find attached as **Exhibit C** Mary Jensen's current Idaho LPC license verification.

**Additional Staffing:** We are currently adding additional licensed professionals to our clinical staff to further strengthen our service delivery.

We are committed to ensuring that we provide the best possible care to our patients while maintaining full compliance with all Magellan regulations and requirements.

Please let us know if you require any additional documentation. We look forward to continuing our partnership in providing quality behavioral health services.

Thank you for your consideration.

Sincerely,

 **Outlook**

## Follow-up: Additional Licensed Clinical Staff Addition "HEIDI WILSON"

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Sun 5/25/2025 9:58 PM

**To** White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; Tovar, David <tovard1@magellanhealth.com>; welshd@magellanhealth.com <welshd@magellanhealth.com>; Kast, Elizabeth <kaste@magellanhealth.com>; nanselr@magellanhealth.com <nanselr@magellanhealth.com>

📎 5 attachments (4 MB)
HEIDI EXHIBIT C.pdf; Heidi ICADC.pdf; HEIDI bachelors.pdf; HEIDI ADC.pdf; HEIDI RESUME.pdf;

Hello,

Following up on yesterday's email, I am pleased to inform you that we have hired an additional licensed professional.

We have recently hired **Heidi Wilson, Idaho Certified Alcohol and Drug Counselor (ICADC) and Alcohol and Drug Counselor (ADC),** who is properly licensed in the state of Idaho and will provide specialized addiction counseling services.

**Heidi Wilson's Licensed Scope of Practice includes:**

- Individual and group substance abuse counseling
- Addiction assessments and treatment planning
- Relapse prevention and crisis intervention
- PHP/IOP program services and case management

Ms. Wilson's licenses allow her to perform all substance abuse counseling activities required for our PHP/IOP programs in accordance with Idaho Code 54-3401.

**License Documentation:** Please find attached as **Exhibit C** Heidi Wilson's current Idaho ICADC and ADC license verification.

This additional hiring further strengthens our clinical capacity and ensures full compliance with all Magellan regulations and requirements.

Please let us know if you require any additional documentation.

Thank you for your consideration.

Sincerely,

Elhadi Benkirane

 Outlook

## Case Manager Position Filled – Chase Leia Dreksler

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Tue 5/27/2025 10:12 AM

**To** White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; nanselr@magellanhealth.com <nanselr@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>; welshd@magellanhealth.com <welshd@magellanhealth.com>; Kast, Elizabeth <kaste@magellanhealth.com>

📎 3 attachments (2 MB)
bachelor Chase.pdf; chase d references.docx; chase D.pdf;

Hello,

Per your recent assessment, we have added **Chase Leia Dreksler, Bachelor of Science**, as a case manager to strengthen care coordination and ensure compliance with Magellan requirements.

Thank you for your prompt attention to this update and for your continued support.

Elhadi,

 **Outlook**

---

**New Licensed Professional Counselor on Staff**

---

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Sun 5/25/2025 5:26 AM

**To** White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; Tovar, David <tovard1@magellanhealth.com>; nanselr@magellanhealth.com <nanselr@magellanhealth.com>; Kast, Elizabeth <kaste@magellanhealth.com>; Welsh, David <welshd@magellanhealth.com>

📎 4 attachments (11 MB)

MARYJENSEN C FORM; MARYJENSEN FBI; MARYJENSEN LPC; MARYJENSEN CNA;

Hello,

I am writing to inform you that we have addressed the previous staffing concern. We have recently hired **Mary Jensen, Licensed Professional Counselor (LPC) and Certified Nurse Assistant (CNA),** who is properly licensed in the state of Idaho and will be working full-time on-site to provide clinical services.

**Mary Jensen's Licensed Scope of Practice includes:**

- Individual, group, and family counseling for substance use and mental health disorders
- Psychosocial assessments and treatment planning
- Crisis intervention and safety planning
- Psychoeducational group facilitation (substance abuse education, coping skills, relapse prevention)
- Care coordination and aftercare planning
- PHP/IOP program services including daily therapy sessions and intensive case management

Ms. Jensen's license allows her to perform all clinical activities required for our PHP/IOP programs in accordance with Idaho Code 54-3401.

**License Documentation:** Please find attached as **Exhibit C** Mary Jensen's current Idaho LPC license verification.

**Additional Staffing:** We are currently adding additional licensed professionals to our clinical staff to further strengthen our service delivery.

We are committed to ensuring that we provide the best possible care to our patients while maintaining full compliance with all Magellan regulations and requirements.

Please let us know if you require any additional documentation. We look forward to continuing our partnership in providing quality behavioral health services.

Thank you for your consideration.

Sincerely,

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT M

**Page 4 of the IBHP Provider Handbook Supplement stating that "The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan (IBHP) to administer and also transform the state's behavioral health system of care."**

SECTION 1: INTRODUCTION

# Welcome

Welcome to the Idaho Behavioral Health Plan (IBHP) Provider Handbook Supplement, which addresses policies and procedures specific for the IBHP. This provider handbook supplement is to be used in conjunction with the Magellan National Provider Handbook (and Magellan organizational provider supplement, as applicable). When information in this supplement conflicts with the national handbook, or when specific information does not appear in the national handbook, the policies and procedures in the IBHP supplement prevail. Additionally, Magellan requires all providers to adhere to the standards outlined in the Idaho Medicaid Provider Handbook.

## Contact Information

If you have questions, Magellan is eager to assist you. We encourage you to visit our IBHP dedicated website at www.MagellanofIdaho.com. We have designed www.MagellanofIdaho.com for you to have quick and easy access to information and answers to questions you may have about working with Magellan.

- Through the Availity Essentials portal, accessed at www.Availity.com, you can look up authorizations and verify the status of a claim online, in addition to completing other key provider transactions.
- For authorizations, claims status inquiries and complaints and grievances, contact Magellan Healthcare of Idaho at 1-855-202-0983.
- For general inquiries, contact Magellan's national Provider Services Line at 1-800-788-4005.
- For Idaho network-specific inquiries, email us at IdahoProvider@MagellanHealth.com or call the provider line at 1-855-202-0983.

## Idaho Behavioral Health Plan (IBHP) Introduction

The Idaho Department of Health and Welfare (IDHW) partnered with Magellan Healthcare to serve as the state-wide administrator for the new Idaho Behavioral Health Plan (IBHP) to administer and also transform the state's behavioral health system of care. The IBHP is the framework for how behavioral health and substance use disorders are administered in Idaho. Magellan manages behavioral health services for the Divisions of Behavioral Health and Medicaid. Magellan also manages the provider network for the Department of Juvenile Corrections. We oversee behavioral health services for Idahoans who don't have health insurance as well as those who have Medicaid or other types of insurance. IBHP serves approximately 425,000 children and adults with complex behavioral health needs.

## Covered Services

Refer to Appendix C IBHP Program Services.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,
                            *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,
                            *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT N

March 27, 2025, pre-litigation communication from Plaintiff Elhadi Benkirane to Defendants David Welsh and David Tovar in their individual capacities, asserting anticipated personal litigation against each of them individually and raising concerns regarding selective enforcement of compliance standards against WHR. Constitutes the protected petition activity at the core of Plaintiff's First Amendment retaliation claim.



***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us by telephone at 908.343.7214 Thank you.

---

**From:** White House Recovery & Detox <admin@recoveryatwhitehouse.com>
**Sent:** Thursday, March 27, 2025 3:19 PM
**To:** Marisa Sisk <marisa@mdrnsolutions.com>
**Cc:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>; Kast, Elizabeth <kaste@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>; Nansel, Rebekah <nanselr@magellanhealth.com>
**Subject:** Re: WH recovery

EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Lol!

Elizabeth, you're out of the office from 3/27/2025-3/31/2025. You get paid for being out of the office still right? That sounds like a nice gig!

We need answers now! We are providing services and not being paid!! That's not how business works!!

David, you didn't even bother to show up to the Idaho provider advisory committee monthly meeting today. What were you doing today that you couldn't make it? Everyone had the same questions, and guess what? David wasn't there so we received no answers, and the authority was shifted back to you like usual. You have promised the committee members to PERSONALLY handle this payment situation and you haven't done that. You have had months!! This is unacceptable!!

I am going to go to all the committee members and hire attorneys and we are going to file a class action lawsuit against you guys and name you both personally, how about that?

You have until the end of the day tomorrow to provide answers or I am going to take legal action, I am going to social media and the news outlets, and I am going to make it my personal life's mission to expose the dealings of Magellan and how you shut us all out of business because you breached contract and didn't pay us for services we provided and patients of yours that we saved. And we WILL get paid eventually, but people will die in the process because we shut down and aren't here anymore. And that's on both of you. Shame on you both.

The clock is ticking. Get back to us ASAP!!!

Sent from my iPhone

> On Mar 27, 2025, at 12:31 PM, White House Recovery & Detox <admin@recoveryatwhitehouse.com> wrote:
>
> Elizabeth and David,
>
> When can we expect the claims to be paid out? We need a timeline, we are down to the wire. Marisa is not in receipt of the encrypted file still. Please advise ASAP.
>
> Sent from my iPhone
>
>> On Mar 27, 2025, at 12:00 PM, Marisa Sisk <marisa@mdrnsolutions.com> wrote:
>>
>> Dear Elizabeth,
>>
>> If you could please send me the encrypted file with noted claims as mentioned that would be greatly appreciated.
>>
>> We can take a look at that to ensure that no other corrected claims need to be submitted.
>>
>> Also, did you happen to have the SCA form for each client that shows that the SCA was in fact granted for each individual on that list that I provided?
>>
>> Thank you so much!
>>
>> Warmly,
>> Dr. Marisa A. Sisk, M.S., Psy.D.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

          *Plaintiff***,**

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

          *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT O

**Plaintiff's Formal Response and Appeal of Termination
Letter to David Welsh dated May 27, 2025 (6 pages) —
full remediation of all 10 deficiencies**

305 N LINCOLN STREET

POST FALLS ID, 83854

800.510.5393

www.idahoiop.com



**David Welsh, MBA**                                                                                           05/27/2025
Executive Director, Provider Relations
Magellan Healthcare, Inc.
333 W. Rossi St., Suite 100
Boise, ID 83706

**Re:** Formal Response to Termination Notice Dated May 27, 2025 – Request for Network Reinstatement

**Dear Mr. Welsh:**

This letter serves as our formal response to Magellan Healthcare's termination notice dated May 27, 2025, regarding WHR Intensive Outpatient Program's network participation. We respectfully contest this termination and request immediate reinstatement based on the facts outlined below.

**Background and Timeline**

On May 25, 2025, WHR IOP completed comprehensive remediation of all identified deficiencies and sent emails of such completion to Magellan Healthcare. Despite this timely remediation, Magellan proceeded with termination on May 27, 2025, without allowing adequate time for review of our corrective actions or providing an opportunity for dialogue. This precipitous action created significant disruption to patient care continuity and demonstrates a failure to follow standard remediation protocols typically afforded to network providers, potentially violating:

- *42 CFR § 438.214 (Provider selection and network adequacy standards)*
- *Idaho Code § 41-4004 (Network adequacy requirements)*
- Due Process Clause of the 14th Amendment (Procedural due process rights)

**Pattern of Bad Faith Dealing and Retaliatory Conduct by Magellan**

this termination represents the culmination of a systematic pattern of bad faith dealing and retaliatory conduct by Magellan Healthcare against WHR IOP, demonstrating clear targeting and discriminatory treatment:

**Contract Mismanagement and Bad Faith:**

- August 2024: WHR IOP executed initial network provider contract with Magellan
- Magellan lost our original signed contract due to their internal mismanagement
- 8 months of limbo: Magellan held WHR in uncertain status while failing to locate original contract
- Forced re-contracting: Magellan required WHR to execute new contract solely because of Magellan's negligence in losing original documentation
- False network status claims: Magellan incorrectly informed WHR they were "not in network" for inpatient services despite having valid signed contracts



305 N LINCOLN STREET

POST FALLS ID, 83854

800.510.5393

www.idahoiop.com

## Payment Delays and Bad Faith Financial Conduct:

- Months of delayed payments for services already rendered to Magellan members
- Ongoing refusal to pay for multiple clients who received completed services
- No justification provided for payment denials despite fulfilled service obligations
- Systematic pattern of payment delays affecting WHR's financial stability

## Retaliatory Audit Following Payment Demands:

- Timing demonstrates retaliation: Audit commenced immediately after WHR's payment demands intensified
- Selective enforcement: **IT IS EASILY PROVABLE IN COURT THAT WHR WAS THE ONLY PROVIDER SUBJECTED TO THIS TYPE OF TARGETED AUDIT**
- No other providers with identical or worse practices received similar scrutiny or enforcement action

**Good Faith Efforts Despite Magellan's Misconduct: Despite this systematic pattern of bad faith dealing, contract mismanagement, payment delays, and retaliatory conduct by Magellan, WHR IOP CONTINUED TO ACT IN GOOD FAITH by:**

- Maintaining high-quality patient care throughout payment delays
- Cooperating with all Magellan requests despite their contractual breaches
- Executing new contract when Magellan lost original documentation
- Immediately remediating all identified deficiencies within 48 hours
- Continuing to serve Magellan members despite ongoing payment issues

## This pattern of conduct by Magellan violates multiple legal standards:

- Idaho Code § 28-1-203 (Good faith and fair dealing in contracts)
- 42 U.S.C. § 1983 (Retaliation for exercising legal rights)
- Idaho Code § 6-2104 (Tortious interference with business expectations)
- 15 U.S.C. § 1 (Antitrust violations through exclusionary conduct)

Comprehensive Documentation of Corrective Actions Completed

## 1. Staffing and Credentialing Deficiencies - FULLY REMEDIATED:

- Hired Mary Jensen, LPC
- Hired Gregory Lippert, LCPC, CADC, MAC
- Hired Heidi Wilson, CADC
- Hired Chase Dreksler (Bachelor of Science, completing Master's in Social Work)
- All staff credentials verified and documented per Idaho and Magellan standards

## 2. Supervision of Non-Credentialed Staff - FULLY REMEDIATED:

- Gregory Lippert now providing mandatory on-site supervision of paraprofessionals
- Ari Labowitz remains Clinical Director overseeing clinical operations remotely
- Individual supervision protocols implemented and documented
- All supervisory staff retrained on documentation requirements



### 3. Assessment and Treatment Planning - FULLY REMEDIATED:

- BioPsychoSocial/ASAM assessments now completed exclusively by Gregory Lippert or Mary Jensen
- All assessments cross-signed/confirmed by Clinical Director Ari Labowitz
- Master's-level clinician requirement now met for all comprehensive diagnostic assessments

### 4. Individual, Group, and Family Therapy - FULLY REMEDIATED:

- Group therapy now collectively provided in-person by Gregory Lippert, Mary Jensen, and Heidi Wilson
- Individual therapy provided in-person by Gregory Lippert (no longer via telehealth)
- Family therapy provided in-person by Gregory Lippert (telehealth discontinued for PHP services)

### 5. 24-Hour Crisis Services - FULLY REMEDIATED:

- Crisis services now provided in-person or via telephone within business hours (8am-9pm)
- After-hours crisis resources established: Kootenai Crisis Center, emergency services, 911, and 988 suicide/crisis line
- Crisis intervention follow-up protocols implemented within 24 hours of events

### 6. Skills Building Activities - FULLY REMEDIATED:

- All group sessions and skill-building activities now conducted by appropriately credentialed professionals and paraprofessionals under Magellan guidelines as specified in Appendix C
- Required Skills Training and Development course requirements now met by all facilitating staff
- SUD credentials and degrees in human services field verified for all staff
- Adaptive coping skills groups now run by appropriate paraprofessionals
- Current support staff pursuing additional education and credentialing

### 7. Psychiatric and Medical Services - FULLY REMEDIATED:

- Dr. Nina continues as Medical Director for IOP/OP level clients with proper medical oversight
- Local provider Carlo Orozco MSN, FNP-C, ARNP secured for enhanced medical services
- Medical service delivery protocols updated to meet in-person requirements

### 8. Care Coordination and Discharge Planning - FULLY REMEDIATED:

- Chase Dreksler and Heidi Wilson now providing case management/discharge planning services
- Both staff members meet bachelor's degree requirement in human services field
- Care coordination protocols updated per Appendix C requirements



### 9. Program Structure and Documentation - FULLY REMEDIATED:

- PHP and IOP levels of care now completely separated
- PHP programming: 9am-12pm and 1pm-4pm, Monday-Friday
- IOP programming: 6pm-9pm, Monday-Friday
- Individualized treatment planning based on ASAM assessments implemented
- Daily onsite clinical evaluation for risk and safety protocols established

### 10. Privacy Concerns - FULLY REMEDIATED:

- Music recordings that clients participate in contain no protected health information
- All recordings stored securely on external hard drives that remain at the facility
- Access restricted exclusively to authorized program personnel
- Privacy protocols clarified and documented per HIPAA requirements
- No external access or distribution of any client-related materials

**Evidence of Selective Enforcement and Targeting**

**Lack of Opportunity for Standard Remediation Process**: Magellan's immediate termination without allowing standard remediation time demonstrates a departure from typical provider relations protocols and potentially violates established administrative procedures. Despite completing all corrective actions within 48 hours of the deficiency notice, we were not afforded the customary opportunity to demonstrate compliance before termination proceedings, potentially violating:

- **Idaho Code § 67-5242 (Contested case procedures)**
- **42 CFR § 438.414 (Provider appeal rights)**
- **Due Process Clause protections under Constitutional law**
- **Idaho Administrative Procedure Act requirements for fair notice and opportunity to be heard**

**Concerns Regarding Enforcement Consistency:** During recent communications with Mr. David Tovard, it became apparent that identical operational practices are widespread among other Idaho network providers, many operating at significantly greater volume and for extended periods without enforcement action. Mr. Tovard's expressed surprise upon learning of these commonplace practices demonstrates that WHR IOP was subjected to disproportionate scrutiny relative to other network providers with identical or worse practices.

This evidence strongly suggests selective enforcement rather than systematic compliance monitoring across the provider network, potentially violating:

- **42 U.S.C. § 1983 (Civil Rights Act - Equal Protection violations)**
- **42 CFR § 438.12 (Freedom of choice and non-discrimination requirements)**
- **Idaho Code § 67-5909 (Equal treatment under administrative procedures)**
- **42 CFR § 438.214(c) (Good faith efforts in provider network management)**

We respectfully request clarification regarding the uniform application of network compliance standards and enforcement actions across all contracted Idaho providers to ensure equitable treatment within the network.



305 N LINCOLN STREET

POST FALLS ID, 83854

800.510.5393

www.idahoiop.com

**Pattern of Targeting:** The timing and manner of this termination, combined with the failure to acknowledge our comprehensive remediation efforts, suggests this action was predetermined rather than based on ongoing compliance concerns. Other facilities with documented worse practices continue to operate without similar enforcement action, indicating WHR IOP was specifically targeted for contract cancellation rather than genuine quality concerns, potentially violating:

- **42 U.S.C. § 1983 (Deprivation of rights under color of law)**
- **42 CFR § 438.12(a)(2) (Discrimination prohibition in managed care)**
- **Idaho Code § 67-5279 (Arbitrary and capricious administrative action)**
- **42 CFR § 438.214(d) (Provider agreement termination standards)**

**Requested Resolution**

To ensure continued quality care for Magellan members, address the pattern of discriminatory treatment, and restore proper business relations, we respectfully request the following actions:

1. Immediate reinstatement of WHR IOP to active network status
2. Written acknowledgment that all previously identified deficiencies have been satisfactorily addressed and remediated
3. Payment of all outstanding amounts owed for services already rendered to Magellan members
4. Clarification of compliance standards and their uniform application across the provider network
5. Investigation into the selective enforcement practices that resulted in disproportionate targeting of WHR IOP
6. Written assurance that no further retaliatory action will be taken against WHR IOP for exercising legal rights to demand payment
7. Formal acknowledgment of Magellan's pattern of bad faith dealing and commitment to proper contractual relations going forward

**Next Steps and Timeline**

We request written confirmation of reinstatement by June 3, 2025. If this matter cannot be resolved through direct communication, we are prepared to pursue appropriate remedies through:

Administrative appeals processes as outlined in our provider agreement

Relevant state regulatory authorities, including the Idaho Department of Insurance

Federal court proceedings for violation of due process rights and discriminatory enforcement practices under:

- **42 U.S.C. § 1983 (Civil Rights Act)**
- **14th Amendment Due Process Clause**
- **42 U.S.C. § 1981 (Equal Rights under the Law)**

**Federal regulatory authorities, including but not limited to:**

- **Department of Health and Human Services (42 CFR Part 438)**
- **Centers for Medicare & Medicaid Services (42 CFR § 438.214)**
- **Office of Inspector General (42 CFR § 1001.952)**



305 N LINCOLN STREET

POST FALLS ID, 83854

800.510.5393

www.idahoiop.com

All appropriate state and federal oversight bodies with jurisdiction over healthcare network management and provider relations under:

- Idaho Code Title 41 (Insurance Code)
- Idaho Code Title 67, Chapter 52 (Administrative Procedure Act)

**Professional ethics complaints regarding selective enforcement practices**

**Civil rights enforcement agencies regarding discriminatory targeting and unequal treatment under:**

- 42 U.S.C. § 2000d (Title VI - Civil Rights Act)
- Section 504 of the Rehabilitation Act

**All other legal and administrative remedies available under state and federal law, including:**

- Contract breach claims under Idaho common law
- Breach of covenant of good faith and fair dealing (Idaho Code § 28-1-203)
- Retaliation claims for demanding payment of contractual obligations
- Tortious interference with business relations (Idaho Code § 6-2104)
- Antitrust violations under Sherman Act (15 U.S.C. § 1-2)
- Promissory estoppel claims based on contractual representations
- Intentional infliction of emotional distress through systematic bad faith conduct

**Conclusion**

WHR IOP has demonstrated extraordinary commitment to compliance by completing comprehensive remediation of all identified deficiencies within 48 hours, despite Magellan's systematic pattern of bad faith dealing, contract mismanagement, payment delays, and retaliatory conduct spanning 8 months. Our proactive response demonstrates our dedication to providing high-quality care to Magellan members and maintaining full compliance with all network requirements even while being subjected to discriminatory treatment.

The failure to acknowledge these remediation efforts, combined with evidence of selective enforcement and the clear pattern of retaliatory conduct following our demands for payment, raises serious concerns about the fairness and consistency of Magellan's provider relations practices. The easily provable fact that WHR was the only provider subjected to this type of targeted audit and termination, while providers with worse practices continue operating, demonstrates clear discriminatory targeting.

This termination appears to be retaliation for exercising our legal right to demand payment for services rendered rather than genuine compliance concerns. The timing, selective enforcement, and departure from standard remediation protocols all support this conclusion.

We believe this matter can and should be resolved expeditiously through good faith communication that recognizes our substantial compliance efforts and addresses Magellan's pattern of misconduct. However, if necessary, we are fully prepared to demonstrate in federal court the systematic targeting, retaliation, and discriminatory enforcement practices that led to this improper termination.

We appreciate your attention to this urgent matter and request your immediate response to prevent further disruption to patient care and restore equity in network provider treatment.

Respectfully submitted,

Elhadi Benkirane



# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,

Case No. 2:25-cv-00314-DCN

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

# EXHIBIT P

Official PAC meeting minutes from May 22, 2025, confirming that Plaintiff received no prior notice of any issue with his PAC participation and was simply marked absent in the minutes while Tovar chaired the meeting. Establishes that Plaintiff's removal on June 6 was abrupt, unannounced, and unrelated to any prior procedural deficiency.



**Magellan Health Services of Idaho**
**Provider Advisory Committee-PAC 3 May 22, 2025**

| Attendance | |
|---|---|
| **Voting Member** | |
| **Present** | **Name** |
| Yes | David Tovar, MBA, MSW, Network Director (Chair) |
| Yes | Sara Bennett |
| No | Dr. Michael Walton |
| Yes | Denise Jensen |
| No | Christina Loder |
| No | Stacy Stephens |
| Yes | Robert Wagner |
| No | Lyn McArthur |
| Yes | Jared Bake |
| No | Elhadi Benkirane |
| No | Laura Scuri |
| No | Jen Browning |
| Yes | Karah Pack |
| Yes | Heidi Rasmussen |
| No | Katie Rohlander |
| Yes | Tina Ricks |
| No | Jillian Mitki |
| Yes | Sandra Mueller |
| Yes | Jen Romero |
| | |
| **Non-Voting:** | |
| Yes | Katherine Powers, Magellan Training Team |
| Yes | Elizabeth Kast, Magellan Network Team |
| No | Seth Ingram, Sr. Dir, Operations |

PAC Meeting Minutes

| | |
|---|---|
| No | Angie Kallas, VP, Network Development |
| No | Jennifer Bly, Clinical Care Navigation Director |
| No | David Welsh, Idaho Executive Director |
| No | Sue Hawn, Magellan Network Team |
| Yes | Kyle Penney, Magellan Network Team |
| No | Dr. Pullen, Magellan Chief Medical Officer |
| Yes | Brennan Serrano, Magellan Marketing Communications Manager |
| Yes | Anne Shulze, Magellan Quality Team Director |
| No | Dr. Harland, Magellan Medical Director |
| Yes | Christina Ward, IDHW |
| Yes | Jason Meatte, IDHW |
| No | Danielle Schippman, IDHW |
| Yes | Ashley Porter, IDHW |
| No | John Hart, IDHW |
| No | Molly Perotti, IDHW |
| No | Jayci Adams, IDHW |
| Yes | Alexis Luper, IDHW |
| Yes | Emily Miller, IDHW |
| Yes | Sherry Johnson, IDHW |
| Yes | Rebeka Nansel, Magellan Provider Relations Manager |
| No | Shasha Sheng, Magellan Network Team |
| Yes | Erin Miller, Magellan Network Team |
| No | Mallory Kotze, Magellan Account Executive |
| Yes | UCLA rep Christine |
| Yes | UCLA rep Claudia |
| | |
| | |
| Yes | AmyTopp, Provider Engagement Specialist Idaho Network, Scribe |

| Agenda Item | Findings / Discussion | Conclusion of Decisions/ Follow-Up |
|---|---|---|
| | **General Business** | |

PAC Meeting Minutes

| Agenda Item | Findings / Discussion | Conclusion of Decisions/ Follow-Up |
|---|---|---|
| **General Business** | • Welcome to the 5/22/2025 PAC 3 Meeting<br>• 3/27/2025 Meeting Minutes approval – approved | |
| **Updates** | **UCLA Telehealth Study presentation:**<br>• Claudia and her team from UCLA presented their NIH-funded study on state telehealth policies and their impact on mental health care access. They are seeking provider participation in focus groups to understand the effects of telehealth policies, especially post-COVID, and are offering a $50 gift card for participation.<br><br>**Magellan Quality – Two Quality Improvement Activities (QIA): Educating Providers on Evidence based Suicide Risk Assessments; and Reducing Restraints:**<br>• Anne presented findings from the 2024 quality improvement program evaluation, highlighting two key areas for provider community input.- The number one finding from quality of care investigations, particularly those sourced from critical incident reports (deaths), indicated that 71% required corrective action plans.- 100% of these corrective action plans focused on the practices' suicide risk assessment or the use of evidence-based suicide risk assessments. - Anne mentioned that Magellan quality collaborates with providers to improve the identification and use of evidence-based suicide risk assessments.- Discussions with the state customer explored interventions to educate providers and provide resources on evidence-based suicide risk assessments.<br>    · Denise inquired whether documentation should include both safety plans and notes on patient progress regarding suicide risk. Anne clarified that either would suffice.<br>• Regarding restraint reduction, Anne shared a story about an out-of-state residential provider with a high numberof restraints.An analysisof when restraints occurred helped identifyissues.<br>    · Sandy shared that their acute inpatient units implemented a code grid response system with a pre-de-escalation process, leading to a reduction in clinical violence and restraints. Sandy explained that the model involves a multidisciplinary approach with security and clinical teams, utilizing de-escalation techniques and adapting the response to be similar to code blues in the hospital.<br><br>**Marketing Updates:**<br>• Brennan, the marketing manager, discussed provider marketing visits aimed at building relationships and providing resources. He also announced the upcoming second edition of the provider newsletter in June, which will include updates from the executive director and information on the member portal. | Providers interested in participating can reach out to christinethompson@mednet.ucla.edu<br><br><br><br><br><br>Serranob@magellanhealth.com |

PAC Meeting Minutes

| Agenda Item | Findings / Discussion | Conclusion of Decisions/ Follow-Up |
|---|---|---|
|  |  |  |
| **Provider Roundtable** | · Heidi expressed appreciation for the smooth billing and reimbursement processes.<br>· Jennifer raised ongoing issues with Availity, particularly with connecting/eligibility with patients and problems with CANS and system not working efficiently. Rebecca suggested that providers with chronic Availity issues reach out to the network team for faster resolution through the internal IT team.<br>. Gainwell information provided by State rep, Ashley: idproviderenrollment@gainwelltechnologies.com 866-686-4272, information release with more details https://publicdocuments.dho.idaho.gov/WebLink/DocView.aspx?id=32482&dbid=0&repo=PUBLIC-DOCUMENTS    Website: https://www.idmedicaid.com/ Idaho Medicaid Health PAS online. All questions regarding registration with Gainwell should go to Gainwell. |  |
| **Closing Remarks** | • Next PAC meeting 7/24/2025<br>• David acknowledged the claim resubmission backlog and assured attendees that a dedicated team is working to catch up, emphasizing that it has been a high priority. |  |

David Tovar

**David Tovar,Director, Network,PAC CHAIR**

5/22/2025

**Date**

*Amy Topp*

**Amy Topp, Provider Engagement Specialist**
Scribe, Provider Advisory Committee

5/22/2025

**Date**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

         *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

         *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT Q

July 7, 2025, email from Plaintiff's staff  to Magellan requesting an update on the pending appeal and reiterating the selective enforcement concern, noting that Moonlight Mountain and other similarly situated providers had not been subjected to comparable enforcement action. Magellan did not respond.

 **Outlook**

**Re: Acknowledgement of Appeal Letter**

**From** Marley <marley@recoveryatwhitehouse.com>

**Date** Wed 7/23/2025 2:58 PM

**To** Nansel, Rebekah <nanselr@magellanhealth.com>; Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>; Elhadi Benkirane <benkirane.hadi@gmail.com>

**Cc** Welsh, David <welshd@magellanhealth.com>; Isabella IOP <admin@idahoiop.com>

Hello Rebekah,

I am writing to request an update regarding the status and scheduling of the appeal hearing for our contract termination. As of today, it has been 58 calendar days since the termination occurred, and we have yet to receive any communication or follow-up information regarding the appeal process or hearing date.

This prolonged silence is increasingly concerning, especially considering the impact this delay continues to have on our ability to serve clients and operate effectively. We have made every effort to comply with all required procedures in a timely manner, and we respectfully request the same level of diligence in return.

Please confirm whether a date has been set for the appeal hearing or provide any relevant updates. We are eager to resolve this matter and would appreciate more transparent and timely communication moving forward.

Thank you for your attention to this matter. I look forward to your response.

Warm Regards,
Marley West
*Executive Assistant*
Direct line (323)522-7000
Admissions (800)510-5393
WHR- IOP
WH Recovery Post Falls

**From:** Nansel, Rebekah <nanselr@magellanhealth.com>
**Date:** Monday, June 30, 2025 at 3:02 PM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>, Elhadi Benkirane <benkirane.hadi@gmail.com>, Marley <marley@recoveryatwhitehouse.com>
**Cc:** Welsh, David <welshd@magellanhealth.com>
**Subject:** RE: Acknowledgement of Appeal Letter

Dear Mr. Benkirane,

I am reaching out as we have received back the following letters sent USPS as undeliverable:

- Letter of findings mailed 5/20/2025 – letter was also sent via email and confirmed receipt; USPS returned this letter to our office.

- Termination Letter mailed 5/27/2025 – letter was also sent via email and confirmed receipt; USPS returned this letter to our office.

- Acknowledgement Receipt- Appeal mailed 6/10/2025 – USPS returned this letter to our office.

We mailed these letters to the address provided to us and on file:

WHR Intensive Outpatient LLC
305 N. Lincoln St.
Post Falls ID 83854

Please find a copy of the Acknowledgement Receipt- Appeal attached to this email and reply me confirming receipt with update address for future correspondence.

Have a wonderful day,

Rebekah Nansel, MBA, BSW
Provider Relations Manager, Magellan Healthcare of Idaho
Magellan Health
**M** 208.691.5944 | **E** nanselr@magellanhealth.com
magellanhealth.com



***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us by telephone at 908.343.7214 Thank you.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

               *Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES 1 through 10,

               *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT R

May 29, 2025, audit summary email from Magellan, sent two days after the termination letter, listing the site-visit attendees by name and summarizing the details of the enforcement action taken against WHR, including the specific audit findings that formed the stated basis for the deficiency letter and termination. Establishes who participated in the enforcement action and the scope of the audit.

 Outlook

**Magellan site visit attendee names**

**From** Marley <marley@recoveryatwhitehouse.com>

**Date** Thu 5/29/2025 3:18 PM

**To** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>; admin@idahoiop.com <admin@idahoiop.com>

On May 12th

Rebekah Nansel- provider relations manager (in person)
Erin miller- provider engagement specialist (in person)
Tabatha Haywood- clinical manager adult ICC (intensive care coordination) program (in person)
David Tovar- magellan director (Virtual)
Dr Sam Pullen- chief medical officer for Idaho behavioral health (Virtual)
David Welsh- Magellan CEO was invited but was not in attendance

On May 1st
All in person
Rebekah nansel- provider relations manager
Erin miller- provider engagement specialist
Amy Topp- provider engagement specialist

Warm Regards,

Marley West
*Executive Assistant*
Direct line (323)522-7000
Admissions (800)510-5393
WHR- IOP
WH Recovery Post Falls

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

.

ELHADI BENKIRANE,
                            *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES 1 through 10,
                            *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT S

February 21, 2025, network-status email from Magellan to WHR confirming WHR was in good standing in the IBHP network, with an active contract and billing status, and no compliance issues or enforcement actions (emailmag.pdf). Establishes WHR's pre-enforcement status and the absence of any compliance concern before Plaintiff's March 27, 2025, protected communication.

 Outlook

## Urgent: Network Status & Authorization Issues with Magellan

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Fri 2/21/2025 11:36 AM

**To**    Kast, Elizabeth <kaste@magellanhealth.com>; Perry, Bianka <BPerry@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>

Hi,

I hope you're doing well. I'm reaching out regarding a **pressing issue** affecting our authorizations and claims processing with Magellan Healthcare.
Our biller recently spoke with a Magellan case manager regarding a denied authorization. We were informed that the **denial was administrative, not based on medical necessity**, and was due to our **network status**. The case manager stated that their supervisor instructed them to deny the request for this reason.

We have consistently understood that these cases should be **convertible to Single Case Agreements (SCAs)** and have **previously reached out to networking regarding our contract status**. Additionally, **we have received multiple authorizations across different levels of care**, which raises concerns about **inconsistencies in how our network status is being applied**.

This situation is now **impacting the processing of claims and creating confusion regarding our ability to obtain authorizations moving forward**. Currently, we have **several clients on census with Magellan who either have active authorizations or do not require authorization**, but this issue is causing uncertainty in claims processing.

Can you please provide **urgent clarification** on:

1. **The exact status of our network participation** for Sub-Acute Detox, RTC, and PHP, as Magellan's system does not currently reflect us as in-network for these services.
2. **How we can resolve this promptly** to prevent further denials and disruptions.
3. **Any immediate steps we need to take** to ensure continuity of care for current and future clients.

Given the urgency of this matter, we would greatly appreciate a **quick response and guidance on resolving this issue**. Please let us know if a call would be beneficial to discuss this further.

Thank you for your time and support. I look forward to your response.

Best regards,



**ELHADI BENKIRANE**
EXECUTIVE DIRECTOR
- WH Recovery Post Falls Inc.
- 805.630.7445
- 800.510.5393
- www.idahodrugdetox.com

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

.

ELHADI BENKIRANE,

          *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.

DAVID WELSH; DAVID TOVAR; and

DOES 1 through 10,

          *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT T

February 2025 contracting/TIN/ASAM email chain between Magellan and WHR confirming WHR's network provider agreement was fully executed and active, with billing credentials in place and no outstanding compliance issues. Corroborates Exhibit S as to WHR's good standing immediately before the protected activity.

 Outlook

---

**Fw: WH recovery**

---

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Mon 6/2/2025 11:56 AM

**To**   Marley <marley@recoveryatwhitehouse.com>

---

**From:** Perry, Bianka <BPerry@magellanhealth.com>
**Sent:** Wednesday, February 19, 2025 8:29 AM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>; Kast, Elizabeth <kaste@magellanhealth.com>
**Cc:** Tovar, David <tovard1@magellanhealth.com>; Haywood, Laura M. <LMHaywood@magellanhealth.com>
**Subject:** RE: WH recovery

Hi Elizabeth,
Elhadi is correct. We already resolved this issue.
Please let me know if you need additional information.
Bianka

---

**From:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Sent:** Wednesday, February 19, 2025 11:24 AM
**To:** Kast, Elizabeth <kaste@magellanhealth.com>
**Cc:** Perry, Bianka <BPerry@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>
**Subject:** Re: WH recovery

---

EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Thank you for your response. However, this issue has already been fully addressed, and we have received confirmation of the following:

MIS: 601681390  Type: Organization

Provider Name: WH RECOVERY POST FALLS INCORPORATED ADMIN

Setting Type: RESIDENTIAL TREATMENT CENTER

TIN: 92-3125084

This is the admin/contract holder for the services provided.

MIS: 601691-785 Type: Group

Provider Name: WHR IOP LLC

TIN: 99-5016787

This is the new TIN under which PHP and IOP services are being contracted.

MIS: 601753-709 Type: Group

Provider Name: WH RECOVERY POST FALLS INCORPORATED

TIN: 92-3125084

The contract from July 2024 was under a different TIN, but that has already been corrected. The correct TIN for our PHP and IOP services is 99-5016787, which has already been assigned an MIS number.

Since the necessary corrections have already been made, there is no reason to require a new contract. The updated TIN and provider name were already submitted and approved.

Get Outlook for iOS

---

**From:** Kast, Elizabeth <kaste@magellanhealth.com>
**Sent:** Wednesday, February 19, 2025 8:13:17 AM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Cc:** Perry, Bianka <BPerry@magellanhealth.com>; Tovar, David <tovard1@magellanhealth.com>
**Subject:** RE: WH recovery

I can clarify. The contract signed in July 2024 was under the name WHR IOP LLC with a different tax ID number. This contract was never active though. I have WH Recovery's tax ID number as 92-3125084 which is registered under the name "WH Recovery Post Falls INC." According to the W9 and the Sites and service form Amy Topp received on 1/15/2025, you wanted that tax ID associated with your PHP and IOP service. The name on the Magellan Healthcare provider agreement must match the name registered with the Tax ID number. That is why I sent you a brand-new contract. I am sorry for the miscommunication over the ASAM certification requirements. I highly recommend you check out our Appendix C on Magellanofidaho.com to view the "provider requirements" for each level of care you wish to provide. (link: https://magellanofidaho.com/documents/2446693/3042016/ibhp_prov_handbook_appC.pdf/2046bdcf-dab9-fa0b-f5ff-4fb5371edbe5?t=1718993330450). To clarify, the ASAM certification is NOT required for the ASAM 2.5 and 2.1 level of care.

---

**From:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Sent:** Wednesday, February 19, 2025 3:48 AM
**To:** Kast, Elizabeth <kaste@magellanhealth.com>; Perry, Bianka <BPerry@magellanhealth.com>; Tovar, David

<tovard1@magellanhealth.com>
**Subject:** Re: WH recovery

EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Hi Elizabeth,

We need immediate clarification on why a new contract is being requested for PHP and IOP when we have already completed the entire contracting process for both inpatient and outpatient locations and have been issued MIS numbers for both.

When we began this process, we were explicitly informed that for these levels of care, we needed either CARF or Joint Commission accreditation. We obtained Joint Commission accreditation for both inpatient and outpatient levels of care and finalized all necessary steps before accepting patients.

Based on this understanding, we moved forward with patient admissions at both locations. At this point, we have eight clients in our inpatient facility who have been receiving services for the past 20 days. The fact that we are now being told we cannot bill after following all the outlined steps and receiving our MIS number is unacceptable and puts us in an extremely difficult financial position. If we cannot bill for services already provided, we will be forced into bankruptcy.

Additionally, all required documents, including insurance and accreditation, have already been submitted and approved. We do not understand why we are now being asked to provide a new contract as if the process were not already completed.

We need an immediate resolution to this issue and a clear explanation as to why we are suddenly being told we cannot bill after being fully approved and assigned MIS numbers. Please provide clarity as soon as possible so we can move forward without further financial damage.

Best regards,

Elhadi Benkirane

Business Phone: 805-630-7445

Get Outlook for iOS

**From:** Kast, Elizabeth <kaste@magellanhealth.com>
**Sent:** Tuesday, February 18, 2025 4:07:42 PM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** RE: WH recovery

Thank you for clarifying. We would still love to contract for the PHP and IOP services. Unfortunately, we can not contract for the ASAM 3.7 and 3.5 level of care until you obtain that ASAM certification.
To proceed with the lower level of care contract, I have attached the IBHP contract to this email. Please review, sign, and email it back to me. I will also need a copy of your general liability Insurance and general professional liability insurance. Can I get an updated sites and service form without the ASAM 3.7,3.5,and 3.1 level of care because those require the ASAM certification.

Thank you,

Elizabeth Kast
Provider Engagement Specialist
Magellan Healthcare
www.Magellanofidaho.com

Check out the new provider trainings: Events and training | Magellan Healthcare
IBHP provider handbook: Handbooks and forms | Magellan Healthcare
Getting Paid: Getting paid | Magellan Healthcare
FAQs: Frequently asked questions | Magellan Healthcare

**From:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Sent:** Wednesday, February 12, 2025 3:48 PM
**To:** Kast, Elizabeth <kaste@magellanhealth.com>
**Subject:** Re: WH recovery

EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Thank you for reaching out! Yes, WH Recovery provides ASAM 3.7 and 3.5 level of care, and we have the necessary accreditation for it. While we do not yet have the ASAM 3.7 certification, our program meets the requirements to deliver this level of care.

In addition to 3.7 and 3.5, we also offer PHP and IOP services. We are always looking for ways to expand and enhance our offerings for Idaho Medicaid members, so we'd love to explore any additional needs you've identified.

Get Outlook for iOS

**From:** Kast, Elizabeth <kaste@magellanhealth.com>
**Sent:** Wednesday, February 12, 2025 12:07:27 PM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** RE: WH recovery

Awesome. It is exciting to hear about an a ASAM 3.7 provider in Northen Idaho. It is needed. Has WH Recovery obtained the ASAM 3.7 certification as well?

**Provider Requirements**

SUD residential treatment facilities must meet the following requirements:

- Have a National Provider Identifier (NPI).
- Have current national accreditation to provide behavioral healthcare by one of the following bodies:
    - The Commission on Accreditation of Rehabilitation Facilities (CARF),
    - The Joint Commission (TJC), or
    - The Council on Accreditation (COA)

- Have current ASAM 3.5 and/or 3.7 Level of Care Certification from CARF for the level(s) the facility intends to deliver. Staff must meet the ASAM standards for the level of service provided.
- Residential treatment services may be provided in accredited Institutions for Mental Diseases (IMDs).
    - IMDs providing SUD services are required to provide at least two forms of Medication Assisted Treatment (MAT) for Opioid Use Disorder (OUD) in order to receive Medicaid reimbursement.

Are there other services WH Recovery was interested in providing to Idaho Medicaid members?

Thanks,

Elizabeth Kast
Provider Engagement Specialist
Magellan Healthcare
www.Magellanofidaho.com

Check out the new provider trainings: Events and training | Magellan Healthcare
IBHP provider handbook: Handbooks and forms | Magellan Healthcare
Getting Paid: Getting paid | Magellan Healthcare
FAQs: Frequently asked questions | Magellan Healthcare

**From:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Sent:** Tuesday, February 11, 2025 6:38 PM
**To:** Kast, Elizabeth <kaste@magellanhealth.com>
**Subject:** RE: WH recovery

EXTERNAL: **This email originated from outside of the organization. Do not click on any links or open any attachments unless you trust the sender and know the content is safe.**

Dear Elizabeth,

Thank you for reaching out. I'm pleased to confirm that our facility holds accreditation from The Joint Commission for all inpatient levels of care for substance abuse and mental health.

Best Regards,



**From:** Kast, Elizabeth <kaste@magellanhealth.com>
**Sent:** Tuesday, February 11, 2025 12:27 PM
**To:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Subject:** WH recovery

Hey Elhadi,

I am reaching out to continue the contracting process with the Idaho Behavioral Health Plan (IBHP). The Utilization Management team is letting me know that you are requesting authorizations for ASAM 3.7 services. Do you have an accreditation and an ASAM certification for 3.7 level of care?

Thanks,

Elizabeth Kast
Provider Engagement Specialist
Magellan Healthcare
www.Magellanofidaho.com

Check out the new provider trainings: Events and training | Magellan Healthcare
IBHP provider handbook: Handbooks and forms | Magellan Healthcare
Getting Paid: Getting paid | Magellan Healthcare
FAQs: Frequently asked questions | Magellan Healthcare

***Confidentiality Notice*** This electronic message transmission contains information belonging to Magellan Health, its subsidiaries or affiliates, that is solely for the recipient named above and which may be confidential or privileged. MAGELLAN HEALTH, its subsidiaries or affiliates, EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify us at . Thank you.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

Case No. 2:25-cv-00314-DCN

# **EXHIBIT U**

March 26, 2025 demand letter from WHR to Magellan for an outstanding balance of $146,831.02 (not including authorized detox and RTC days), together with Plaintiff's April 6, 2025 urgent email to Magellan documenting Magellan's systematic payment delays and claims denials: the network provider agreement was signed January 3, 2025, yet WHR's claims were still being denied as out-of-network; WHR's billing company had quit due to non-payment; and multiple months of completed services remained unpaid. The first compliance audit commenced immediately after WHR intensified its payment demands, providing an independent basis for a retaliatory motive.

 Outlook

---

## Fw: URGENT: WHR IOP Lincoln, Contract Signed Yet Still Denied / Immediate Call Needed

---

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Mon 6/2/2025 12:09 PM

**To** Marley <marley@recoveryatwhitehouse.com>

---

📎 2 attachments (2 MB)

MAGELLAN CONTRACT WHR LETTER.pdf; MAGELLAN CONTRACT WHR.pdf;

---

**From:** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>
**Sent:** Sunday, April 6, 2025 2:17 PM
**To:** welshd@magellanhealth.com <welshd@magellanhealth.com>; Nansel, Rebekah <nanselr@magellanhealth.com>; White House Recovery & Detox <admin@recoveryatwhitehouse.com>; Marley <marley@recoveryatwhitehouse.com>; Tovar, David <tovard1@magellanhealth.com>
**Subject:** URGENT: WHR IOP Lincoln, Contract Signed Yet Still Denied / Immediate Call Needed

Dear Rebekah,

I'm writing with urgency and growing concern.

We continue to suffer the consequences of a situation that should have been resolved months ago. **The contract for WHR IOP Lincoln was signed and fully executed by Karen Galowitz on January 3, 2025** (attached), yet we were still receiving **claim denials citing out-of-network status**. These denials pre-date this email thread and have caused massive disruption to our billing and operations.

We were told the issue would be resolved and the system updated, but it's becoming increasingly clear that **Magellan may not be aware this contract exists,** despite it being fully executed. This oversight is deeply concerning, especially since **we've already submitted the updated Sites and Services form last week**, even though it's highly irregular to be asked for that two months after contract execution.

To add to the urgency: **our billing company, Marisa, quit on us due to non-payment.** The ship is sinking, people are jumping off, and we're left struggling after providing services we were contractually authorized to deliver.

At this point, we need to cut through the delays. **Please schedule a call immediately** so we can walk through everything and correct this on your end once and for all. Also, kindly **remove Marisa from all future correspondence** as she is no longer involved.

Dr. Marisa A. Sisk, M.S., Psy.D.

On Mar 26, 2025, at 12:53 PM, White House Recovery & Detox <Admin@recoveryatwhitehouse.com> wrote:

David,

We have an outstanding balance of $146,831.02 — this does NOT include any of the authorized detox and RTC days that you guys are trying to not pay on.

What does the contract say about how soon payment needs to be rendered?

How soon will these claims be paid? We have not received a single dollar from you guys still! We are providing life saving services and are going to be forced into bankruptcy and to close our doors if we aren't paid this month for these outstanding balances.

It's that serious. Advise ASAP.

Sent from my iPhone

On Mar 26, 2025, at 11:56 AM, Marisa Sisk <marisa@mdrnsolutions.com> wrote:

Hello!

I am writing to follow up on the status of the INN contract for WHR IOP LLC / WH Recovery - Post Falls.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

          *Plaintiff,*

v.

MAGELLAN HEALTHCARE, INC.

DAVID WELSH; DAVID TOVAR; and

DOES  1 through 10,

          *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT V

August 25, 2025, follow-up email from Plaintiff to Magellan requesting an immediate decision on the pending appeal, noting that the ongoing delay was causing significant harm, including vulnerable patients unable to access services, over five qualified staff displaced, and operations continuing to deteriorate. Confirms that as of August 25, 2025, nearly three months after termination, Magellan had issued no decision on the appeal.

 **Outlook**

---

**WHR IOP Appeal - Need Decision**

---

**From** Elhadi Benkirane <elhadi@recoveryatwhitehouse.com>

**Date** Mon 8/25/2025 4:18 PM

**To** segoselin@magellanhealth.com <segoselin@magellanhealth.com>; Marley <marley@recoveryatwhitehouse.com>

**Cc** White House Recovery & Detox <admin@recoveryatwhitehouse.com>

Dear Ms. Goselin,

I need an update on the status of our contract termination appeal for WHR Intensive Outpatient Program.

We had our appeal meeting with you and your team where we presented our defense. The meeting went well and we provided all the  responses you needed.

**Impact of Continued Delay:** The ongoing delay in providing a decision on this appeal is causing significant harm:

- Vulnerable patients with substance use disorders remain unable to access our specialized treatment services
- Over 5 qualified staff members have been displaced and forced to seek other employment
- Our ability to resume operations continues to deteriorate with each passing day
- Patients who need intensive outpatient services are being denied care

**Request for Resolution:** Given that we successfully addressed all concerns during our meeting and no additional issues were identified, we respectfully request an immediate decision on our appeal. We need either:

1. Approval of our appeal with reinstatement to active network status, or
2. Clear explanation of any remaining requirements with specific timelines

The prolonged uncertainty is preventing us from serving patients who desperately need behavioral health services. We have been in limbo since May 27, 2025, and require a definitive response to move forward.

Please provide a written decision within 5 business days.

Sincerely,

ELHADI BENKIRANE
EXECUTIVE DIRECTOR
WHR IOP LLC
562.207.8820

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

.

ELHADI BENKIRANE,

               *Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

               *Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT W

National Provider Identifier (NPI) public registry records confirm Lisa Marie Tovar, LCSW, as the registered owner of Treasure Valley Counseling and Wellness PLLC (NPI 1649959495), the clinic in which David Tovar holds a management role. Corroborates Exhibits D and H as to the existence and identity of the competing clinic.

NPPES NPI Registry

NPPES    Downloads    API    Help

# Provider Information for 1649959495

The following NPI(s) contain information matching your search criteria. Please select the NPI to view all the data associated with the NPI.

Home  /  NPI View

**Please Note:** Issuance of an NPI does not ensure or validate that the Health Care Provider is Licensed or Credentialed. For more information please refer to NPI: What You Need to Know

TREASURE VALLEY COUNSELING AND WELLNESS PLLC

Organization Subpart: NO

NPI: 1649959495

Last Updated: 2025-02-05
Certification Date: 2025-02-05

## Details

| Name | Value |
|------|-------|
| NPI | 1649959495 |
| Enumeration Date | 2023-07-17 |
| NPI Type | NPI-2 Organization |
| Status | Active |
| Authorized Official Information | Name: LISA MARIE TOVAR LCSW<br>Title: Owner<br>Phone: 2088707978 |

| Mailing Address | 17484 N OWL PEAK AVE<br>NAMPA, ID 83687-7106<br>United States<br><br>Phone: 208-870-7978 \| Fax:<br>View Map ⧉ |
|---|---|
| Primary Practice Address | 3782 E AMITY AVE STE 105<br>NAMPA, ID 83687-8961<br>United States<br><br>Phone: 208-870-7978 \| Fax:<br>View Map ⧉ |
| Secondary Practice Address(es) | |

| Health Information Exchange | Endpoint Type | Endpoint | Endpoint Description | Use | Content Type | Affiliation | Endpoint Location |
|---|---|---|---|---|---|---|---|

| Other Identifiers | Issuer | State | Number | Other Issuer |
|---|---|---|---|---|

| Taxonomy | Primary Taxonomy | Selected Taxonomy | State | License Number |
|---|---|---|---|---|
| | Yes | 193400000X - Single Specialty Group<br>101Y00000X - Counselor | | |



A federal government website managed by the
U.S. Centers for Medicare & Medicaid Services
7500 Security Boulevard, Baltimore, MD 21244

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

.

ELHADI BENKIRANE,

*Plaintiff*,

v.

MAGELLAN HEALTHCARE, INC.
DAVID WELSH; DAVID TOVAR; and
DOES  1 through 10,

*Defendants.*

Case No. 2:25-cv-00314-DCN

# EXHIBIT X

Idaho Department of Health and Welfare bid evaluation records showing that David Welsh, while still employed as a senior official at IDHW, evaluated competing bids for the IBHP contract and gave Magellan's bid the second-highest score. Welsh subsequently left IDHW and assumed the role of Magellan's sole Contractor Contact with the State, personally executing the $1.216 billion IBHP contract.

# Idaho Capital Sun ▲▲

## Idaho Medicaid mental health contractor hires three state government employees

Idaho Department of Administration 'is confident no laws were broken' in the contract solicitation

BY: **KYLE PFANNENSTIEL** - JUNE 18, 2024    4:30 AM



📷 Magellan of Idaho — awarded the $1.2 billion Idaho Behavioral Health Plan contract to manage Idaho Medicaid mental health benefits — has hired three former Idaho Department of Health and Welfare employees. (Getty Images)

***Editor's note:*** *This is the second story in a two-part series on the Idaho Behavioral Health Plan contract. The first story focused on concerns that the new contractor, Magellan of Idaho, could delay payments to mental health providers.*

A company set to take over Idaho state government's largest contract has hired three former state government employees, including one who judged companies' contract bids.

Magellan of Idaho — awarded the $1.2 billion Idaho Behavioral Health Plan contract to manage Idaho Medicaid mental health benefits — has hired three former Idaho Department of Health and Welfare employees.

That includes Magellan of Idaho's new CEO David Welsh, former Idaho Department of Health and Welfare deputy administrator for Medicaid benefits. Welsh evaluated bids for the contract,

giving Magellan's bid the second highest score, said Kim Rau, spokesperson for the Idaho Department of Administration, which handles government contracts.

But even without Welsh's scores, the contract outcome wouldn't have changed, she said.

"The Department of Administration is confident no laws were broken in the (Idaho Behavioral Health Plan) solicitation," agency spokesperson Kim Rau told the Idaho Capital Sun in an April 29 email.

There is no law or regulation barring state employees from later working on a contract, said Idaho Department of Health and Welfare spokesperson AJ McWhorter. Idaho government employees leaving for private sector jobs is helpful, given limited expertise in Idaho, according to an Idaho health care lobbyist and McWhorter.

Magellan did not directly respond to questions about its hiring of Idaho government employees. Spokesperson Kristen Durocher said Magellan built its team "through a recruitment process that adheres to all applicable requirements."

"Magellan Healthcare is committed to providing eligible Idahoans with a system of behavioral health care to maintain healthy and active lives within their communities," she said in an April 29 statement. "We have assembled an expert and dedicated professional team to carry out that mission through a recruitment process that adheres to all applicable requirements."

Magellan also hired David Tovar, former bureau chief for the Idaho Behavioral Health Plan Governance Bureau in the Idaho Department of Health and Welfare, and Mallory Kotze, a former Idaho Department of Health and Welfare plan contract manager.

Tovar and Kotze had no role negotiating or evaluating the contract, state officials told the Sun.

## Idaho government employees leaving for private sector jobs helpful, official and lobbyist say

Since Idaho has a small health care market, with few people with knowledge to run these programs, "it is common to see movement of staff to pursue new opportunities for professional growth," McWhorter told the Sun. That includes shifting between positions with the state, providers and contractors or consultants, he said.

And it happens outside of large contract transitions, he said.

"This has been particularly true as (the Idaho Department of Health and Welfare) has gone through a recent reduction in workforce as part of the transition of this contract where we have seen state staff who are now seeking new opportunities outside of state employment after previously administering behavioral health services or managing programs as state staff," McWhorter said. "We see this as a positive for Idaho as individuals gain new experience and

knowledge which further supports programs that rely on expertise in both government and the private sector."

Idaho Association of Community Providers lobbyist David Lehman said there's finite expertise in Idaho. He called recruitment by businesses of state experts "the nature of the free market."

He said the Legislature could take up legislation in this area – commonly called revolving-door legislation. But "the alternative is that we have less qualified people trying to implement really complicated systems," he said.

"I'd rather have the smartest people working on the implementation, than the guy who wasn't involved in any way, shape or form," Lehman told the Sun.

## Magellan would've had highest-rated contract without soon-to-be CEO's evaluations, official says

The Idaho Division of Purchasing, within the state Department of Administration, told all potential evaluators on the contract that they'd be disqualified from evaluating bids in the contract solicitation "if at the time of their involvement in the evaluation process they are currently seeking employment or intending to seek employment with any bidder in the solicitation process," Rau told the Sun.

"We are not aware of any information to suggest that any of the evaluators in the (Idaho Behavioral Health Plan) solicitation were actively seeking employment or intending to seek employment with any of the bidders at the time of the evaluation," she said.

Even if the Idaho Division of Purchasing disqualified Welsh and disregarded his scores, Rau said, Magellan's bid still would've had the highest rating and the outcome of the solicitation wouldn't have changed.

Another bidding company, Beacon, had the highest score, Rau said, but was disqualified due to past work that officials said was related to the contract. None of the nine state evaluators ranked Optum — the company that held the contract for a decade — in first place, Rau said.

The evaluator who scored Magellan's bid highest is still a state employee, Rau said.

## How legal issues that could affect the contract have unfolded

As the Idaho Legislature prepared to adjourn for the year in April, Gov. Brad Little warned that a new law requiring legislative approval of Medicaid waivers could disrupt health care services, including state plan amendments for the Idaho Behavioral Health Plan Contract transition. The Legislature adjourned without new legislation.

The Idaho Department of Health and Welfare had paused submitting state plan amendments related to some enhanced services for the Idaho Behavioral Health Plan while it sought legal guidance, agency spokesperson McWhorter told the Sun in April.

But new analysis from the Idaho Attorney General's Office let the state health department move forward with submitting those state plan amendments, McWhorter told the Sun in June. The agency is working with legal counsel to review other work that needs to be included in state plan amendments and waivers, he said.

Idaho's decision in June 2023 to award Magellan the contract sparked lawsuits from two losing bidders. District court judges last year ruled they didn't have jurisdiction to review the state's contract award decision, citing limits on judicial review in Idaho's government contracting law, the Sun previously reported.

Both suing companies — Optum, which has held the contract since 2013, and Beacon — appealed to the Idaho Supreme Court.

The Idaho Supreme Court in April denied Optum's request to legally block the new contract's implementation. Following a legal agreement in May, Optum's lawsuit was dismissed in the Idaho Supreme Court.

Beacon's lawsuit awaits legal briefs by defendants in the Idaho Supreme Court.

Optum's contract to run the Idaho Behavioral Health Plan is set to end June 30, spokesperson Chris Smith told the Sun in a statement.

"... (W)e remain committed to providing high quality behavioral health treatment services to the state and the providers and members we serve," Smith said. "We are currently in the process of working through all transition activities related to the (Idaho Behavioral Health Plan) contract."