Kim J. Trout ISB# 2468
Alyssa R. Jones ISB# 12181
service@trout-law.com
Trout & Jones PLLC
3778 N. Plantation River Drive
Suite 101
Boise, ID 83703
Telephone:    (208) 577-5755
Facsimile:    (208) 557-5756

Christopher Flynn (*pro hac vice*)
 CFlynn@crowell.com
CROWELL & MORING LLP
600 Fifth Street NW
Washington, D.C. 20001
Telephone:    (202) 624-2500
Facsimile:    (202) 628-5116

Neil Nandi (*pro hac vice*)
 NNandi@crowell.com
CROWELL & MORING LLP
300 N. LaSalle Dr.
Suite 2500
Chicago, IL 60654
Telephone:    (312) 321-4200
Facsimile:    (312) 321-4299

*Attorneys for Defendants*
*Magellan Healthcare Inc., David Welsh, and*
*David Tovar*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Elhadi Benkirane,<br>*Plaintiff*,<br><br>v.<br><br>Magellan Healthcare Inc., David Welsh, David Tovar, and Does 1-10,<br>*Defendants*. | Case No. 2:25-cv-00314-DCN<br><br><br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT |

1

The main question before the Court is whether Plaintiff Benkirane was personally injured by the termination of a commercial contract to which he was not a party. The Court's reasoning dismissing the Original Complaint applies with equal force here: "all of Plaintiff's claims stem from the Agreement" between Magellan and WHR IOP LLC ("WHR"), "[m]ost of the relief requested by Benkirane, if granted, would go to make WHR whole, rather than to compensate Benkirane directly," making WHR "without a doubt, the proper party in interest." Dkt. No. 31 at 4–5.

Plaintiff's Amended Complaint does not remedy this standing defect because it does not add WHR as a party. Instead, the Amended Complaint reflects superficial efforts to recast WHR's alleged injury as Plaintiff's. Neither these efforts nor the 97 pages of exhibits Plaintiff attaches to his opposition brief change the underlying analysis. Plaintiff is the wrong party to pursue these claims.

Plaintiff has had two opportunities to plead a viable claim. He has not done so. The Court should therefore dismiss the Amended Complaint with prejudice.

## I.    Plaintiff's Exhibits Confirm That Any Injury Belongs to WHR.

Plaintiff attaches 24 exhibits to his opposition to Defendants' motion to dismiss. Dkt. No. 43-2. The Court need not consider these exhibits when evaluating standing because the contract at issue here belonged to WHR, its termination allegedly injured WHR, and any downstream harm to Plaintiff exists only because of that injury to WHR. Indeed, even Plaintiff's alleged damages are based on "WHR's revenue, Plaintiff's compensation [at WHR], and the clinic's projected growth." Opp. ¶ 8. "[I]t is not sufficient for the plaintiff to assert a personal economic injury resulting from a wrong to the corporation." *See Wisdom v. Centerville Fire Dist., Inc.*, No. CV 07-095-S-EJL, 2008 WL 11349089, at *6 (D. Idaho Aug. 20, 2008) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989)). Because Plaintiff's alleged injuries flow directly from WHR's injury, Plaintiff lacks standing. *See Wisdom*, 2008 WL 11349089, at *6 (recommending dismissal for lack of standing where plaintiff's claims asserted the company's legal rights, not his own).

Even if the Court considers Plaintiff's exhibits when evaluating Defendants' Rule 12(b)(1) motion[1], they merely confirm that WHR is the proper party in this case. Plaintiff's exhibits are largely written on behalf of WHR, refer to WHR's contractual relationship with Magellan, and use "we," "us," and "our" throughout. *See, e.g.*, Ex. F (Benkirane writing in his capacity as "Executive Director, WHR IOP LLC": "*We* are doing everything on our end") (emphasis added); Ex. G (deficiency letter addressed to "WHR Intensive Outpatient Program," discussing "WHR IOP" staffing and programming throughout); Ex. L (compliance emails: "*we* have recently hired Mary Jensen," "*we* are committed to ensuring that *we* provide the best possible care," "continuing *our* partnership in providing quality behavioral health services.") (emphasis added); Ex. O (appeal letter: "*our* formal response to Magellan Healthcare's termination notice . . . regarding *WHR Intensive Outpatient Program's* network participation," "*We* respectfully contest this termination") (emphasis added); Ex. V (appeal follow-up: "*our* contract termination appeal for *WHR Intensive Outpatient Program*," signed "Elhadi Benkirane, Executive Director, *WHR IOP LLC*") (emphasis added). Rather than establishing that Plaintiff was injured, the exhibits establish the opposite—that any injury was sustained by WHR.

## II. Plaintiff Lacks Standing to Pursue These Claims Because WHR Is the Proper Party in Interest.

Defendants moved to dismiss the Amended Complaint under Rule 12(b)(1) because only WHR IOP has standing to pursue Plaintiff's claims, which arise out of a contract between WHR and Magellan. Mot. at 6–8. Plaintiff's opposition makes three efforts to construe these injuries as personal to him. None are availing.

First, Plaintiff argues that losing his position as Executive Director of WHR constitutes a personal injury. Opp. at ¶ 8. But his termination is a consequence of WHR's alleged injury—the loss

---

[1] These materials should not be considered when evaluating Defendants' Rule 12(b)(6) motion. *See Breinholt v. Popular Warehouse Lender*, No. 10-CV-587-EJL, 2011 WL 722265, at *2 (D. Idaho Feb. 22, 2011) ("Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

of the Magellan contract. Plaintiff's own Amended Complaint confirms that his loss of income, position, and professional standing all flowed from WHR losing that contract. Am. Compl. ¶ 43.3 ("As a direct and foreseeable consequence of Defendants' termination of WHR IOP LLC's participation in the Medicaid network, WHR lost its primary source of revenue and was compelled to suspend operations."). *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470 (2006)—which both Plaintiff and Defendants cite—is instructive. There, the Supreme Court held that a "contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." 546 U.S. at 477. McDonald was the shareholder and president of a company that had contracted with Domino's. *Id.* at 472. He argued that Domino's breach of that contract injured him personally. *Id.* at 473. The Court rejected that argument, finding that the contract belonged to the corporation, so any injury flowing from its breach belonged to the corporation. *Id.* at 479–80. The same result follows here. The Magellan contract belonged to WHR, as does any alleged injury from its termination.

Second, Plaintiff argues that his removal from the Provider Advisory Committee ("PAC") is a personal injury. Opp. ¶ 9. But again, any injury related to the PAC is WHR's, not Plaintiff's. WHR was the "provider." It was the party to the provider network agreement, and the original Complaint repeatedly describes it as a "provider." Dkt. No. 2 ¶¶ 1 & 10 (describing WHR as a "behavioral health provider"). By contrast, Plaintiff concedes that he is a "healthcare administrator," rather than a treating professional. Am. Compl. ¶ 1; 29 CFR § 825.125 (defining "health care provider" as a doctor who is authorized to practice medicine or a person who provides health care services).[2] Further, the timing

---

[2] Plaintiff attempts to rehabilitate his standing by calling himself a "provider" throughout the Amended Complaint. *See, e.g.,* Am. Compl. ¶ 46 (calling himself a "provider"); ¶ 49 (calling himself a "participating provider" in the PAC); ¶ 60 (calling himself a "Medicaid behavioral health provider."). But a plaintiff may not use an amended complaint to plead facts that contradict prior allegations, particularly where the purpose is to circumvent dismissal. *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.,* 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'").

of the alleged PAC exclusion confirms that Plaintiff's membership on the PAC was through his role at WHR, as the meeting he missed occurred three days after the audit letter and five days before the termination. Am. Compl. ¶¶ 42, 49.[3]

Third, Plaintiff argues that Magellan told patients that WHR voluntarily terminated the agreement, which harmed his personal reputation. Opp. ¶ 10. But the Amended Complaint confirms that the alleged statements concerned WHR's termination. Am. Compl. ¶ 81 (alleging that Defendants stated to Plaintiff's patient that "WHR voluntarily terminated"). And even WHR lacks an injury, as Plaintiff does not allege that any patient declined to return to WHR because of that statement. *See* Dkt. 20-3 at 19. Without any allegation that the statement caused him harm, there is no injury.

None of Plaintiff's arguments transform WHR's alleged injury into a personal one. Therefore, the Court should dismiss the Amended Complaint for the same standing deficiency that doomed the Original Complaint.

## III.    Even if Plaintiff Were the Proper Party, All of His Claims Fail on Their Merits.

### A.    Plaintiff's Section 1983 Claims Fail Because Defendants Are Not State Actors.

A constitutional claim can only be asserted against a state actor, and Managed Care Organizations ("MCOs") like Magellan are not state actors. Mot. at 9 (citing cases). Plaintiff fails to

---

[3] Even if the alleged PAC exclusion was a personal harm, any injury related to the PAC was a procedural injury that cannot create standing. *Compare* Am. Compl. ¶ 49.1(describing the PAC exclusion only as preventing Plaintiff from "raising concerns about Defendants' conduct"); *and Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (denial of right to comment on Forest Services action was insufficient to confer standing). Such injuries only support Article III standing if the plaintiff shows (1) the defendant violated certain procedural rules, (2) these rules protect the plaintiff's concrete interests, and (3) it is reasonably probable that the challenged action will threaten those concrete interests. *See Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*, 457 F.3d 941, 949 (9th Cir. 2006). Plaintiff does not identify any procedural rule Defendants violated by removing WHR from the PAC. He does not allege any concrete interest that such a rule would protect. And without either, he cannot show that his exclusion from the PAC threatens anything.

address any of the authorities on which Defendants rely or cite a single case undermining them. Instead, Plaintiff makes arguments regarding state actor status that courts have consistently rejected.

First, Plaintiff contends that Magellan performs functions traditionally reserved to the state. Opp. ¶ 24. But administering healthcare benefits is not a traditional state power. *See, e.g.*, *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (holding that the public function exception only applies to "traditionally *exclusively*" public functions like running a utility or school, not "operating an HMO") (emphasis in original). Plaintiff cites *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020), Opp. at ¶ 24, which is readily distinguishable. The private facility in *Rawson* detained patients against their will under a court-ordered involuntary commitment statute and forcibly administered antipsychotic medications in a state psychiatric hospital. 975 F.3d at 745–46. This rendered them akin to private prison providers, which is a core category of state actor. *See Pollard v. The GEO Group, Inc.*, 629 F.3d 843, 854–58 (9th Cir. 2010) (holding that private prison employees act under color of federal law because "the government's power to incarcerate" is "traditionally the *exclusive* prerogative of the government") (emphasis in original), *rev'd on other grounds*, *Minneci v. Pollard*, 565 U.S. 118 (2012). The *Rawson* court found state action because the state could not shed its constitutional obligations to involuntarily committed parties by delegating them to a private actor. 975 F.3d at 755. None of that is present here. Magellan does not operate a state hospital, detain anyone, administer involuntary treatment (or treatment of any sort), or operate under court orders governing its network decisions. *Rawson* does not apply.

Second, Plaintiff contends that Magellan's entwinement with Idaho is so substantial that it constitutes state action. Opp. at ¶ 25. The entwinement test considers whether there is such a "close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletics Ass'n*, 531 U.S. 288, 304 (2001) (citation modified). Plaintiff has failed to plead that the State of Idaho has any control over

6

Defendants. In fact, Plaintiff states that Idaho has entrusted Defendants with the responsibility of paying healthcare providers, which suggests the State has no control over Defendants' workings. Am. Compl. ¶¶ 25–26. And courts consistently hold that MCOs are not state actors under the entwinement test. *See, e.g.*, *Bourbon Cty. Comm. Hosp., LLC v. Coventry Health & Life Ins. Co.*, No. 3:15-cv-00455-JHM, 2016 WL 51269, at *5 (W.D. Ky. Jan. 4, 2016) (granting motion to dismiss and rejecting entwinement test in determining MCOs are not state actors); *Quinones v. UnitedHealth Grp. Inc.*, Civ. No. 14-00497-LEK-RLP, 2015 WL 4523499, at *6 n. 5 (D. Haw. July 24, 2015) (finding that the entwinement test does not apply to cases involved MCOs); *see also Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (holding that the entwinement test does not apply to cases involving HMOs). Plaintiff's supplemental filing regarding a Material Change Notice that Magellan submitted in California is of no import (Dkt. No. 44), as regulatory oversight does not transform a private entity into a state actor. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 816 (rejecting argument that "being heavily regulated makes you a state actor"); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350–51 (1974) (holding that even "extensive and detailed" regulation does not "by itself convert [a private business's] action into that of the State").

Third, Plaintiff contends that Magellan has a symbiotic relationship with Idaho. Opp. ¶ 26. Again, courts hold that private companies administering Medicaid benefits do not fall within this "'narrow' basis for finding that private action is attributable to the state." *Tipton v. Viaquest Behav. Health of Pa., LLC*, No. 10-3573, 2010 WL 5258473, at *3 (E.D. Pa. Dec. 23, 2010). Plaintiff's reliance on *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) (citation modified), Opp. at ¶ 26, is unavailing. The Supreme Court has cast doubt on *Burton,* describing it as an "early" case with a "vague" standard of state action that has since been refined. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 57 (1999). Regardless, *Burton* involved a city-operated parking authority that leased space to a restaurant

which denied service on the basis of race. 365 U.S. at 726. There, the government directly benefitted from the restaurant's revenues. *Id.* at 725. Nothing there resembles these facts.

Fourth, Plaintiff contends that Defendants Welsh and Tovar are state actors in their individual capacities by virtue of their employment duties. Opp. ¶ 28. That argument is just another attempted end-around the requirements for state actor status. A civilian working for a non-state-actor private corporation cannot become a state actor simply by fulfilling his employment duties. Indeed, even a government employee is not automatically a state actor by virtue of that employment. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 317 (1981) (holding that public defender was not a state actor).

Defendants are clearly not state actors under the legal standards above. The Court should therefore dismiss Counts 1 through 4.

### B. Plaintiff's Due Process Claims Fail for the Independent Reason that Plaintiff Has Not Pleaded a Protected Interest.

A due process claim requires Plaintiff to identify a protected liberty or property interest. *See Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996); Mot. at 9. And healthcare providers have no protected property interest in continued participation in Medicaid. *See Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009) (affirming denial of injunction for physician because a provider does "not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs."). Plaintiff contends that the Magellan Handbook created such an interest. Opp. ¶ 31. It did not, as a policy manual that sets out procedural steps does not create a constitutional entitlement. *Timothy v. Oneida Cnty.*, No. 4:14-cv-00362-BLW, 2017 WL 1100896, at *5–8 (D. Idaho Mar. 21, 2017) (finding that employee policy manual containing a framework for disciplinary action and a termination appeal process did not create a property interest in employee's continued employment).

Plaintiff also argues a protected liberty interest, contending that Magellan's alleged false statements to patients stigmatized him and foreclosed future opportunities. Opp. at ¶ 30. He identifies

8

no specific opportunity that Magellan's statements foreclosed, and the alleged statements concerned WHR's termination. Am. Compl. ¶ 81(b). Plaintiff thus has no personal liberty interest claim here.

### C.    Plaintiff Has Failed to Adequately Plead an Equal Protection Claim.

Plaintiff's Equal Protection "class of one" claim fails because the Amended Complaint does not allege with any specificity facts showing that Plaintiff was similarly situated to other providers whom Defendants allegedly treated differently. *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022); Mot. at 10. Plaintiff's reference to "Moonlight Mountain Counseling" appears for the first time in his opposition brief. Opp. ¶¶ 37–38. It is therefore not appropriate to consider on this motion. *See Morgan v. Stevenson*, Case No. 4:19-cv-00297-BLW, 2019 WL 5685582, at *1–2 & n.2 (D. Idaho Nov. 1, 2019) (citing *Schneider v. Ca. Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

Even if the Court did consider it, Plaintiff's reference to Moonlight Mountain is insufficient because Plaintiff does not show an "extremely high degree of similarity" to this purported competitor "in all material aspects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022). Pointing to a competitor that offers similar services in the same region, Opp. ¶ 38, is not enough; Plaintiff must allege that the comparator was similarly situated to WHR in all material ways—including committing the violations that led Defendants to terminate WHR's contract.

### D.    Plaintiff's Intentional Interference Claims Remain Deficient.

Plaintiff's interference claims underscore the standing problem rather than cure it. Every alleged act of interference was directed at WHR, not at Benkirane personally. Mot. at 10. Plaintiff's opposition brief does not change that. *See* Opp. ¶ 42 (describing Magellan's alleged false statements to patients about WHR's contract termination); *id.* ¶¶ 43, 44 (noting Tovar's alleged removal of a

"competitor," which by context means WHR); *id.* ¶ 45 (detailing WHR's alleged destabilization and termination). Plaintiff identifies no business relationship of his own, independent of WHR, that Defendants allegedly interfered with.

## IV.    The Court Should Dismiss the Amended Complaint with Prejudice.

Plaintiff argues that the Ninth Circuit requires *pro se* plaintiffs to receive at least one opportunity to amend before dismissal with prejudice. Opp. at ¶ 58. But the Court already gave Plaintiff that opportunity. Indeed, the Court gave Plaintiff a clear roadmap: add WHR as a party, represented by counsel. Dkt. No. 31 at 1. Plaintiff chose not to follow it. When further amendment would not fix the problem—and it would not here, because only adding WHR can cure the standing deficiency, and Plaintiff has shown he will not do that—dismissal with prejudice is appropriate. *See Dana v. Campbell*, No. 1:18-cv-00298-DCN, 2025 WL 1827042, at *3–4 (D. Idaho July 1, 2025) (dismissing third amended complaint where plaintiff did not comply with the court's directive).

## CONCLUSION

For the reasons stated above, the Court should dismiss the Amended Complaint with prejudice.

June 1, 2026                    By:    */s/ Alyssa R. Jones*
                                           Kim J. Trout
                                           Alyssa R. Jones
                                           Christopher Flynn
                                           Neil Nandi

                                           Attorneys for Defendants
                                           Magellan Healthcare Inc., David Welsh, and
                                           David Tovar

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 1, 2026, a true and correct copy of the above and foregoing document was forwarded via eMail as follows:

Elhadi Benkirane
305 N. Lincoln St.
Post Falls, ID 83854
Benkirane.hadi@gmail.com

/s/ *Alyssa R. Jones*

Alyssa R. Jones
