Elhadi Benkirane
Plaintiff, Pro Se
7506 Baerss Rd
Riverside, California 92507
Telephone: (562) 391-1442
Benkirane.hadi@gmail.com


# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO


ELHADI BENKIRANE,

    Plaintiff,

v.

MAGELLAN HEALTHCARE, INC.;
DAVID WELSH; DAVID TOVAR;
andDOES 1 through 10,

    Defendants.

Case No. 2:25-cv-00314-DCN

**PLAINTIFF'S MOTION FOR
LEAVE TO FILE SUR-REPLY AND
FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

Hon. David C. Nye

United States District Judge


## I. INTRODUCTION

Plaintiff Elhadi Benkirane, appearing pro se, respectfully moves this Court for two related forms of relief. First, Plaintiff seeks leave to file a sur-reply responding to new arguments, case law, and factual characterizations raised for the first time in Defendants' Reply (Dkt. 45). Because these matters were not presented in Defendants' opening Memorandum (Dkt. 40-1),

Plaintiff has had no prior opportunity to address them. Second, and in the alternative, Plaintiff seeks leave to file the Second Amended Complaint attached hereto as Exhibit A, which directly cures the standing defect identified in the Court's March 27, 2026 Order (Dkt. 31) through a materially different and legally sufficient theory.

Both requests are made in good faith. Plaintiff is not seeking to delay these proceedings. Plaintiff is seeking to ensure that the Court has before it the clearest possible picture of how Defendants' retaliatory conduct targeted Plaintiff personally, and a complaint that reflects the standing theory Plaintiff has always intended to advance. The two requests are complementary: the sur-reply addresses an unfair procedural advantage in the Reply; the SAC provides the substantive cure.

## II. MOTION FOR LEAVE TO FILE SUR-REPLY

### A. Legal Standard

This Court has inherent authority to permit a sur-reply where a moving party raises new arguments or presents new evidence for the first time in a reply brief. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (where new evidence is presented in a reply, the district court should permit the non-moving party to respond). The rationale is fundamental fairness: a party should not be permitted to raise a new argument in a reply brief and thereby prevent the opposing party from addressing it. See also *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003) (court "need not consider arguments raised for the first time in a reply brief"). Local Civil Rule 7.1 governs briefing in this Court. Plaintiff respectfully submits that leave to file a sur-reply is warranted under these circumstances.

### B. The Most Critical New Argument: Defendants' Characterization That Plaintiff "Disregarded" the Court's Order

Defendants' most consequential new argument appears for the first time in their Reply: that Plaintiff not merely lacked standing, but that Plaintiff "disregarded" this Court's March 27,

2026 Order. This is a fundamentally different and more damaging claim than anything presented in the opening Memorandum. Defendants' opening brief argued only that the First Amended Complaint failed to establish standing. Defendants' Reply escalates that argument into an accusation of judicial defiance warranting dismissal with prejudice, a sanction that would permanently extinguish Plaintiff's constitutional claims. Defendants rely on *Dana v. Campbell*, No. 1:18-cv-00298-DCN, 2025 WL 1827042 (D. Idaho July 1, 2025), a decision authored by this Court, to support this request for with-prejudice termination.

This escalation is both new and incorrect. Plaintiff did not disregard the Court's Order. Plaintiff complied with the Court's Order by filing an amended complaint that reframed his claims as personal injuries independent of WHR's contractual relationship. That is not defiance. That is a legitimate, legally recognized approach to curing a standing defect. See *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989) (recognizing that a plaintiff's personal injuries are directly actionable regardless of any corporate entity's independent injuries). Moreover, adding WHR as a party is practically impossible: WHR terminated Plaintiff's employment on September 1, 2025, and Plaintiff has had no contact with WHR, no authority over WHR, and no ability to compel its participation in this litigation since that date.

Plaintiff has had no prior opportunity to address this "disregard" characterization because it was not raised in the opening brief. Due process requires an opportunity to respond before the Court acts on an argument. *Provenz v. Miller*, 102 F.3d at 1483. The consequence here is not merely procedural: if the Court dismisses with prejudice based on the "disregard" theory, and Plaintiff has never been permitted to contest that characterization, the result is permanent termination of Plaintiff's constitutional claims on grounds he was never given the chance to answer. That outcome is directly inconsistent with the Ninth Circuit's requirement that pro se plaintiffs receive notice of deficiencies and an opportunity to cure before dismissal with prejudice is entered. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court should

grant leave to file a sur-reply specifically to address Defendants' escalated with-prejudice argument and the "disregard" characterization on which it rests.

## C. Defendants' Reply Raises Additional New Arguments Requiring Response

Beyond the "disregard" theory, Defendants' Reply introduces the following matters not presented in their opening Memorandum (Dkt. 40-1):

**New Case Law.** Defendants cite *Wisdom v. Centerville Fire Dist.* (D. Idaho 2008) and *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.* for the first time, arguing that personal economic injury from a corporate wrong is insufficient for standing. Neither case was raised in the opening Memorandum.

**New Factual Arguments.** Defendants present a detailed analysis of Plaintiff's exhibits, arguing that the use of "we," "us," and "our" language proves all claims belong to WHR (Reply at 3-4). Defendants characterize Plaintiff's damages calculation as based on "WHR's revenue" and "the clinic's projected growth" (Reply at 4). Defendants argue that Plaintiff's March 27, 2025 letter was written "on behalf of WHR" rather than as protected individual speech (Reply at 5).

Plaintiff had no opportunity to address these matters in his Opposition (Dkt. 43) because they did not exist in the record at that time. Due process requires an opportunity to respond. *Provenz,* 102 F.3d at 1483.

## D. Plaintiff's Proposed Sur-Reply Arguments

If granted leave, Plaintiff's sur-reply will address the following points:

1. **Dana v. Campbell Is Distinguishable.** In *Dana*, the plaintiff repeatedly ignored the court's explicit directive without offering any viable alternative approach to curing the identified defect. The court found that further amendment would be futile because the plaintiff had demonstrated an inability or unwillingness to correct the deficiency through any means.

Here, Plaintiff's First Amended Complaint was a good faith attempt to cure the standing defect through an alternative legally recognized path: pleading personal injuries independent of WHR's contractual claims. That is not defiance. That is a legitimate litigation strategy. Plaintiff did not ignore the Court's Order. Plaintiff complied with it by amending the complaint in a manner that addressed the Court's standing concern. The question of whether Plaintiff succeeded in pleading those injuries sufficiently is a merits question, not evidence that amendment was futile.

2. **The Court's Order Gave Leave, Not a Mandate.** The Court's March 27, 2026 Order (Dkt. 31) noted that adding WHR as a party represented by counsel would cure the standing defect. It did not hold that this was the only path to cure. The word "leave" means permission. Plaintiff exercised his right to amend by reframing his claims as personal injuries. This is a recognized alternative approach to establishing standing.

3. **Plaintiff Lacks Authority to Cause WHR to Appear.** WHR IOP LLC terminated Plaintiff's employment on September 1, 2025. Since that date, Plaintiff has had no contact with WHR, no authority over WHR, and no ability to compel WHR's participation in this litigation. Plaintiff lacks authority to cause a separate entity that fired him to appear in this litigation and has no ability to compel its participation. This practical impossibility distinguishes Plaintiff's situation from a plaintiff who simply chooses not to follow a court's directive. See *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) (when joinder is infeasible, the court must weigh equity factors rather than mechanically dismissing); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) (requiring full equity analysis when joinder cannot be accomplished). 4. **The "We/Our" Language Does Not Defeat Standing.** Plaintiff wrote communications in his capacity as Executive Director. Every employee who writes on behalf of an employer uses "we" and "our." But the retaliation targeted Plaintiff personally: the termination letter was addressed to "Elhadi Benkirane, OWNER" (not to WHR IOP LLC); Plaintiff was removed by

name from the Provider Advisory Committee; false statements were made to patients about Plaintiff personally; and Defendants themselves treated Plaintiff as the individual target of their conduct.

5. **Plaintiff's Injuries Are Direct, Not Derivative.** An employee who loses his job because a third party retaliated against him for protected speech suffers a direct personal injury, not a derivative corporate injury. Defendants used the WHR provider agreement as the vehicle to retaliate against Plaintiff for his protected speech. The causal chain is: (1) Plaintiff engaged in protected speech; (2) Defendants retaliated by terminating the provider agreement as the mechanism to destroy Plaintiff's livelihood; (3) WHR lost its contract; (4) WHR terminated Plaintiff. Steps (1) and (2) constitute direct retaliation against Plaintiff's constitutional rights. The fact that the retaliation operated through the corporate relationship does not render Plaintiff's injuries derivative any more than firing an employee through a corporate restructuring renders the employee's wrongful termination claim "derivative." See *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989) (distinguishing derivative shareholder claims from direct personal injuries that are independently actionable).

## III. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

**A. Legal Standard**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts should freely give leave to amend when justice so requires. The Ninth Circuit has interpreted this standard liberally, recognizing a strong policy in favor of allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be denied only upon a showing of undue delay, bad faith, futility, or prejudice to the opposing party. Id. None of those factors is present here. For pro se plaintiffs specifically, the Ninth Circuit requires that a district court provide at least one opportunity to amend before dismissing with prejudice, unless it is absolutely clear that amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc);

*Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). Before dismissing a pro se complaint, the district court must provide the litigant with notice of the deficiencies in order to ensure that the litigant uses the opportunity to amend effectively. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). **B. There Is No Undue Delay**

Plaintiff filed this motion promptly after Defendants filed their Reply on June 1, 2026. The SAC incorporates facts and legal arguments that have developed through the course of this litigation, including Defendants' Reply arguments, this Court's prior order, and Plaintiff's own analysis of the standing deficiency. There has been no undue delay.

**C. There Is No Bad Faith**

Plaintiff brings this motion in good faith to cure a pleading deficiency identified by this Court. Plaintiff is not seeking to harass Defendants or multiply proceedings. Plaintiff is seeking to present the Court with a complaint that properly alleges his personal injuries and gives the Court a sound basis to allow this case to proceed to discovery.

**D. Amendment Is Not Futile**

The Second Amended Complaint attached as Exhibit A cures the standing defect in the following specific ways:

1. The SAC reframes the standing narrative to make clear that Defendants targeted Plaintiff personally, and that the WHR provider agreement was merely the mechanism they used to do so. Rather than framing the case as a contract dispute, the SAC establishes that Defendants specifically identified Plaintiff by name in the termination letter, directed false statements to his patients personally, and removed him by name from the PAC. The SAC pleads that Defendants' retaliatory conduct was aimed at Elhadi Benkirane as an individual, and that WHR's contract termination was the instrument of that retaliation, not its object. This framing

directly addresses this Court's standing analysis and establishes that Plaintiff's injuries are personal and direct, not derivative of WHR's corporate injuries.

2. The SAC eliminates all reliance on WHR's corporate damages. The FAC's Opposition brief (Dkt. 43, paragraph 8) described Plaintiff's damages as being calculated based on WHR's revenue, Plaintiff's compensation, and the clinic's projected growth. Defendants used that language to argue that Plaintiff's injuries are derivative of WHR's corporate injury. The SAC replaces that framing entirely. Plaintiff's damages are pleaded exclusively in personal terms: lost salary in excess of $200,000 annually from the date of his termination by WHR on September 1, 2025 through the present; lost future earning capacity as a behavioral health executive; reputational harm from Welsh's authorization of false patient statements; and loss of professional participation through PAC exclusion.

3. The SAC reframes all factual allegations about WHR as mechanisms through which Defendants targeted Plaintiff personally. The compliance audit, the deficiency letter, the termination of the provider agreement, and the PAC removal are pleaded not as corporate compliance actions, but as the sequential steps in a retaliatory campaign directed at Plaintiff for his protected speech. Each step in the enforcement cascade is framed as conduct aimed at Plaintiff, carried out through WHR as the vehicle. See *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989) (a plaintiff who suffers direct personal injuries as a result of conduct directed at him personally has standing regardless of whether a corporate entity sustained related harm).

4. The SAC explains why Plaintiff lacks authority to cause WHR to appear as a party. The SAC includes a dedicated standing section (Section IV) that directly addresses Dkt. 31 and explains that Plaintiff cannot compel WHR to participate because WHR terminated Plaintiff's employment on September 1, 2025, and Plaintiff has had no contact with or control over WHR since. This is not a choice. This is a factual constraint. Plaintiff does not speak for WHR.

Plaintiff is the only party who can assert these claims because the conduct was directed personally at him.

5. The SAC adds Moonlight Mountain Counseling as a named comparator within the complaint itself, with the specificity required by *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022). The FAC's failure to include this comparator in the complaint was identified by Defendants' Reply as a deficiency. The SAC cures it.

6. The SAC incorporates the Crowell contradiction as a pleaded factual allegation within the state actor section. The same counsel representing Defendants in this action filed a government regulatory notice acknowledging that Magellan's ownership structure is subject to state regulatory review and approval. That documented fact is now pleaded as a factual allegation in the SAC, not merely referenced in a supplemental notice.

7. The SAC individuates Welsh and Tovar with specificity. The SAC includes dedicated factual paragraphs for each individual defendant establishing their revolving door backgrounds from IDHW to Magellan, their personal stakes in the retaliatory conduct, and their specific acts. This individualization is required for the personal capacity claims and was insufficiently developed in the FAC.

**E. Defendants Will Not Be Prejudiced**

Defendants have been on notice of the factual basis for every claim in the SAC since at least the filing of the FAC and Plaintiff's Opposition. The SAC does not introduce new claims or new parties. It refines and clarifies the existing claims in light of the standing analysis developed through the briefing on the current motion. Defendants have the resources of Crowell and Moring LLP and have had full opportunity to develop their defense. They will not be prejudiced by an amended complaint that clarifies Plaintiff's standing theory.

**F. Prejudice to Plaintiff If Leave Is Denied**

If this Court denies leave to amend and dismisses with prejudice, Plaintiff will be permanently deprived of any judicial remedy for violations of his constitutional rights. Plaintiff has had zero income since September 1, 2025, as a direct result of Defendants' retaliatory conduct. Dismissal with prejudice would extinguish Plaintiff's claims while leaving him with no alternative forum and no means of redress. The Ninth Circuit has recognized that the severity of prejudice to the plaintiff is a factor courts must weigh in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (dismissal with prejudice is "a harsh remedy" and the court must weigh "the possible prejudice to the opposing party" against "the impact of a dismissal on the litigant").

## IV. CONCLUSION

Plaintiff respectfully requests that this Court:

1. Grant Plaintiff leave to file a sur-reply responding to new arguments and authorities raised for the first time in Defendants' Reply (Dkt. 45), including the new "disregard" theory relying on *Dana v. Campbell*, No. 1:18-cv-00298-DCN, 2025 WL 1827042 (D. Idaho July 1, 2025), *Wisdom v. Centerville Fire Dist.* (D. Idaho 2008), and the new factual characterizations of Plaintiff's exhibits. Because the "disregard" characterization is the primary basis for Defendants' with-prejudice request, denying Plaintiff the opportunity to respond to it before that drastic remedy is imposed would be fundamentally unfair; and

2. Grant Plaintiff leave to file the Second Amended Complaint attached hereto as Exhibit A, which directly cures the standing defect identified in this Court's March 27, 2026 Order (Dkt. 31) through a legally sufficient personal injury theory that does not require WHR IOP LLC as a party.

In the alternative, if this Court is inclined to dismiss the First Amended Complaint, Plaintiff respectfully requests that the dismissal be without prejudice and that Plaintiff be granted leave

to file the Second Amended Complaint attached hereto.    *Lopez v. Smith*   , 203 F.3d 1122, 1127

(9th Cir. 2000).

Respectfully submitted,

DATED: _____June 2nd_____, 2026

*Benkirane*

/s/ Elhadi Benkirane

Elhadi Benkirane

Plaintiff, Pro Se

7506 Baerss Rd

Riverside, California 92507

Telephone: (562) 391-1442

Benkirane.hadi@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on _____June 2nd_____, 2026, I caused a true and correct copy of the foregoing Motion for Leave to File Sur-Reply and for Leave to File Second Amended Complaint, together with Exhibit A (Proposed Second Amended Complaint), Exhibit B (Standard Healthcare Employment Disclosure Requirements), Exhibit C (Federal OIG Exclusion Background), Exhibit D (Healthcare Employment Credentialing Questions), Exhibit E (Private Employer Exclusion Monitoring Service), and the Declaration of Elhadi Benkirane, to be served upon counsel for Defendants by electronic mail as follows:

Kim J. Trout / Alyssa R. Jones

Trout and Jones PLLC

service@trout-law.com

Christopher Flynn

Crowell and Moring LLP

CFlynn@crowell.com

*Benkirane*

Elhadi Benkirane
Plaintiff, Pro Se
7506 Baerss Rd
Riverside, California 92507
Telephone: (562) 391-1442
Benkirane.hadi@gmail.com